[Crim. No. 215.    Third Appellate District.—October 21, 1913.]

THE PEOPLE, Respondent, v. H. E. HARTMAN, Appellant.

CRIMINAL LAW — APPEAL — NONAPPEALABLE ORDERS.—No appeal lies from a motion in arrest of judgment, or from the verdict, or from an order suspending judgment and placing the defendant on probation.

ID.—ORDER DENYING NEW TRIAL—WHETHER APPEALABLE.—The word "order," in section 1247 of the Penal Code providing for the making of the record upon appeal from "any judgment or order" in a criminal proceeding, is not restricted to an order made after judgment, but the language of the section is broad enough to include an order refusing the defendant a new trial before judgment, notwithstanding the provisions of section 1239 allowing an appeal from "any order made after judgment," especially in view of section 1237 expressly giving the right of appeal from an order denying a motion for a new trial.

DIVORCE—DECREE FOR ALIMONY—SUPPORT OF CHILD.—Where it is ordered, in an action by a wife for a divorce, "that the entire care, custody and control of Dorothy M. Hartman, the minor child of said parties to this action, be and the same is hereby awarded to the plaintiff together with the sum of twenty dollars per month for her support and maintenance," the decree is not to be construed as requiring the husband to contribute to the support of the child.

CRIMINAL LAW—FAILURE OF PARENT TO SUPPORT CHILD—EFFECT OF DI-
    VORCE.—Where the custody of a minor child has been awarded to the
    wife in an action for divorce, and the decree does not require the
    husband to contribute to its support, he is not liable to a criminal
    prosecution under section 270 of the Penal Code for omitting to
    provide the child with necessaries, in the absence of proceedings
    under sections 138 and 139 of the Civil Code to require him to con-
    tribute to the child's support.

APPEAL from an order of the Superior Court of Mendo-
cino County.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

Preston & Preston, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy
Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted by a jury upon
an information charging a violation of section 270 of the
Penal Code, the charging portions of said information being
as follows:
"The said defendant on or about the 1st day of January,
A. D. 1912, at the said Mendocino County, state of California,
and before the filing of this information did then and there,
and ever since said date, willfully, unlawfully and feloniously
omit without lawful or any excuse to furnish necessary food,
clothing, shelter or medical attendance for his child named
Dorothy Maxine Hartman; the said child being then and there
under five years of age and dependent on said defendant for
food, clothing, shelter and medical attendance, contrary to the
form," etc.   Dated September 18, 1912.   The verdict was as
follows: "We the jury find the defendant guilty as charged
in the information, but with a strong recommendation that he
be placed on probation so long as he pays the amount agreed
on with his wife."   At the time appointed for judgment, de-
fendant interposed a motion for a new trial on the statutory
grounds and also a motion in arrest of judgment on several
grounds among which were—That the information does not
state facts sufficient to constitute a public offense; that it fails
to state that the minor child is in a dependent and destitute
condition; or that defendant is under legal liability to support

said child; or that the offense charged, if any, was committed in Mendocino County. The record proceeds: "The court denied the same, and thereupon pronounced its judgment that whereas you, the said H. E. Hartman, having been duly convicted in this court of the crime of felony, to wit, failure to support your minor child, it is therefore ordered, adjudged and decreed that you, the said H. E. Hartman, having been duly convicted in this court of the crime of felony, to wit, failure to support your minor child, and that you be placed on probation, and it is further ordered that you pay $10 per month on the 15th of every month beginning April 15th, 1913, for this period of two years, for the support of said minor child. It is also further ordered that you pay said amount on the 15th day of every month to the probation officer, under whose charge you are placed till the 15th of March two years hence. Pronouncement of judgment is hereby suspended. The defendant then gave notice that he hereby appeals to the district court of appeals . . . from the order denying the defendant's motion in arrest of judgment, also from the order denying his motion for a new trial, and also from the order suspending judgment and placing this defendant on probation, and from the whole and every part of each of said orders.''

No appeal lies from a motion in arrest of judgment or from the verdict. (*People* v. *Lonnen*, 139 Cal. 634, [73 Pac. 586].) Nor is there an appeal, so far as we are advised, from the order suspending judgment and placing defendant on probation.

The attorney-general makes the point that "while the Penal Code has not repealed the section which states that in a criminal case a defendant may appeal from an order denying a motion for new trial''—section 1237 specifically provides that an appeal may be taken by a defendant from an order denying a motion for a new trial—"the statute has utterly failed to provide machinery for taking an appeal" from such order. . . . "Up to this time neither the supreme court nor the district court of appeal has made or formulated any rule providing how a defendant shall take an appeal from an order denying a motion for new trial in a criminal case." It is pointed out that prior to the amendment of section 1240 of the Penal Code (Stats. 1909, p. 1086) the appeal from such order was taken under that section. But, as it has read since 1909, it applies

only to appeals by the people. Attention is called to section 1239 which provides how an appeal may be taken "from a judgment" or from an "order made after judgment," which, it is claimed, cannot be used to perfect an appeal from an order made before judgment, such as is an order denying a motion for a new trial. Finally, it is contended that, while section 1247 of the Penal Code treats of making up of the record on appeal, the word "order" used in the section has reference only to "an order made after judgment" as provided in section 1239. Section 1247 reads: "Upon any appeal being taken from any judgment or order of the superior court to the supreme court or district court of appeal, in any criminal proceeding, where such appeal is allowed by law"— and then follow directions for making up the record. (Stats. 1911, p. 692.) Section 1241 of the Penal Code provides as follows: "Any announcement of an appeal made in open court by either the defendant or the people, must be by the clerk immediately entered in the minutes of the court," whose failure to do so "shall in no way affect or invalidate the appeal." We have seen that the right of appeal from an order denying a motion for a new trial is expressly given by section 1237; that "any announcement of appeal made in open court by either the defendant or the people" must be at once entered in the minutes (sec. 1241) and that "upon any appeal being taken from any judgment or order . . . in any criminal proceeding, where such appeal is allowed by law," the defendant may make an application, under section 1247, for the transcription of the reporter's notes, etc. By section 1247a, it is provided that after these notes have been filed with the clerk and corrections, if any, are made, and the judge has certified the transcription as correct, the clerk "must immediately transmit the same to the court to which the appeal was taken, and thereupon it shall become a part of the record upon appeal." In the present case, the trial court suspended the pronouncement of judgment, as it was authorized to do under section 1203 of the Penal Code, and placed the defendant upon probation. If there was, then, no judgment from which defendant could appeal the only course open by which to have the proceedings reviewed was by an appeal from the order denying his motion for a new trial. It is of this remedy which the attorney-general would deprive him. Under this

view of the law now urged upon us, there is no way by which a convicted defendant who has been placed upon probation can have his trial examined into on appeal unless judgment of conviction and sentence has been pronounced upon him by the court. We are unwilling to hold, as is contended, that the order referred to in section 1247 is an order made after judgment, thus leaving the defendant remediless by appeal. The statute reads: "Upon any appeal being taken from *any judgment or order* of the superior court," etc. This language is broad enough to include the order in question notwithstanding the provisions of the preceding section 1239 allowing an appeal from "any order made after judgment," especially in view of section 1237 expressly giving the right of appeal from an order denying a motion for a new trial.

The court instructed the jury "that the time covered by the information is from on or about January 1, 1912, up to the date of filing the information which is the 18th day of September, 1912."

It appeared that the defendant and Blanch Hartman were married December 15, 1907, ten days after the child in question was born. They separated less than a year thereafter. Blanch Hartman commenced her action for divorce on the ground of desertion, and summons was served on defendant September 23, 1910. The prayer of the complaint was for the custody and care of the child and ten dollars per month for plaintiff's support and maintenance. The defendant failed to answer, and, on his default, the interlocutory decree was entered, November 10, 1910, in which it was "ordered that the entire care, custody and control of Dorothy M. Hartman, the minor child of said parties to this action, be and the same is hereby awarded to the plaintiff, together with the sum of twenty ($20.00) dollars per month for her support and maintenance, payable on the second Monday of each and every month hereafter commencing with the 14th day of November, 1910." The final decree was made and entered on November 24, 1911, in which the order as to the care and custody of the child and the support and maintenance of the wife is the same as in the interlocutory decree.

The natural as well as the grammatical construction of the language of the decree is that the award of twenty dollars per month was for the support and maintenance of the wife and

was in accordance with the prayer of the complaint except that it was for twenty dollars instead of ten dollars per month. If there is any doubt as to the construction to be given the decree the defendant is entitled to the benefit of such doubt. The defendant testified that he did not know until the action was brought that the decree contained any provision for support and there was no evidence that he was ever served with a copy or knew of its provisions further than generally that a decree of divorce had been granted to his wife. The evidence was that the child has been in the care and custody of Mrs. Hartman's parents the most of the time since its birth and during the entire period charged in the information. There is no evidence that the child failed to receive all "necessary food, clothing, shelter or medical attendance," or that it suffered for the want of any of the necessaries of life. There was evidence that, some time before the divorce, defendant paid to the grandparents ten dollars per month for four months, but has not contributed anything toward its support since that time except ten dollars sent his wife about the time the divorce was granted. There was evidence tending to show that he was able at some of this time to have contributed toward its support and there was evidence that during much of the time he was sick and unable to earn any money—once having been operated on for appendicitis, and for some months confined to a hospital. The evidence, however, was sufficient to warrant the implied finding of the jury that, during the period from January 1, 1912, to September 18, 1912, defendant could have contributed to the child's support had he been so disposed. The question is—Was he under any legal obligation to do so?

The trial court gave the following instruction to the jury: "I charge you that in this case, if you find that in the decree of divorce the court ordered the defendant here to pay the sum of $20 per month toward the care, custody, and education of the minor child named, then it became the duty of this defendant to pay such sum as required by the court, and the same became a legal charge against said defendant, and it was the duty of this defendant to pay the same, even though he was deprived of the custody of the child by the decree of divorce." The court also charged the jury: "that if you believe from the evidence in this case beyond a reasonable

doubt that said defendant was able during said period (January 1, 1912, to September 18, 1912), to contribute toward furnishing the necessary food, clothing, shelter or medical attendance for his said child, and that he willfully omitted to do so without lawful excuse, then it is your duty to find the defendant guilty as charged in the information, no matter what his condition has been since said time nor what it may be at the present time." The court instructed the jury further—"that it is the law of this state that a parent who willfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance for his minor children, is guilty of a crime, and may be prosecuted therefor in the name of the people of the state of California. I charge you, therefore, in this case that if the court in the decree of divorce ordered this defendant to pay the sum of $20 per month or any other sum toward the support of this child it was his duty to do so and if he willfully omitted to do so without any lawful excuse therefor as charged in the information, then you should find the defendant guilty as charged in the information."

It will be observed that the court did not instruct the jury that the divorce decree placed any duty upon defendant to support his child but left the question of its interpretation with the jury. The decree was introduced and admitted for the purpose of showing that by its terms it imposed this duty upon defendant and the jury so construed it. We do not think it warranted such construction. The theory of the prosecution was that this decree placed upon defendant this duty, and he having failed to show any lawful excuse for its nonperformance, the verdict of guilty necessarily followed; and it is contended that the fact that the child was cared for willingly by its grandparents furnished no sufficient excuse for defendant's failure of duty put upon him by the decree of divorce.

In the *Matter of McMullin,* 164 Cal. 504, [129 Pac. 773], the decree of divorce, upon substituted service of defendant, was granted in the state of Nevada and awarded the care and custody of the children of the marriage to the plaintiff with provision for her and their support. She came into this state and instituted guardianship proceedings upon the person and estate of her minor child, Juanita. Later, McMullin, defendant in the action for divorce, was held to answer in the

superior court by a magistrate for a violation of section 270 of the Penal Code, in failing to provide his minor child, Juanita, with necessary food, clothing, shelter, and medical attendance. It was held, on *habeas corpus,* that, while the decree of divorce must be given full credit in this state, the order for payment of money to support the child cannot be enforced against the petitioner; that, there being no enforceable decree for the support of the child, its custody having been given to the wife, section 196 of the Civil Code made it her duty to give the child "support and education suitable to his circumstances," there having been no "valid adjudication equivalent to an order made under a power similar to that granted by section 139 of our Civil Code, by which the husband is obligated to support his progeny while denied their custody." As we understand this decision, it is authority for holding that where, in a divorce proceeding, the custody of a minor child is given the mother and no provision in the decree is made for the support of such child by the father, the parent entitled to the custody of the child must support it. By supplementary proceedings, in a proper case, the court may, under sections 138 and 139 of the Civil Code, require the parent who has not the custody of the child to contribute to its support, but until some such proceeding is had his failure to so contribute to the child's support cannot be made the ground of a criminal proceeding under section 270 of the Penal Code. In the case cited the court said: "The legal effect, then, of both the Nevada decree and the guardianship decree was to give the mother the custody and control of the children, *without* charging upon the husband their support. Under section 196 of the Civil Code this situation *prima facie* relieves the husband of the duty of support and casts it on the wife." The principle would seem to apply as well to a domestic decree as to a foreign decree, the determining fact being, as here, that it devolved no duty on the father and did devolve it on the mother.

In the case of *People* v. *Schlott,* 162 Cal. 347, [122 Pac. 846], which was a prosecution under section 270 of the Penal Code, the duty of the divorced husband to provide for the child's support was held to have devolved upon him because the decree expressly required this of him, and therein constituted the distinguishing difference between that case and

*Selfredge* v. *Paxton,* 145 Cal. 713, [79 Pac. 425]. In reviewing the decision of the district court of appeal from the first district, in the Schlott case (opinion by the late Mr. Justice Hall, 12 Cal. App. Dec. 523), the supreme court does not express dissent from the reasoning of that decision when applied to a case where the divorce decree imposes no duty on the husband and father to contribute to the support of the child whose custody is given to the wife and mother. Judge Hall there took the view that, under our statutes and the decisions of the supreme court by him pointed out, the duty to furnish the child with food, etc., "is upon the parent entitled to its custody" (Civ. Code, sec. 196), and in *Ex parte McMullin* it was expressly held that "this situation *prima facie* relieves the husband of the duty of support and casts it upon the wife." This view of the law we must accept and enforce though not in accord with that expressed by us when the case was before us. (*In re McMullin,* 19 Cal. App. 481, [126 Pac. 368].) The instructions of the learned trial judge were based upon an erroneous view of the law and necessarily misled the jury to defendant's prejudice.

Defendant contends with some reason that where, as here, the child was willingly and, apparently, well and adequately cared for by its grandparents during the period charged, the omission by defendant to furnish necessaries is not sufficient to make out a crime under section 270 of the Penal Code. The section declares the parent guilty of a felony "who willfully omits, without lawful excuse, to furnish necessary food, clothing, shelter or medical attendance for his child." There was evidence that defendant had offered to take the child and support it, but as he was not entitled to its custody this offer probably cannot avail him. The grandmother of the child testified that defendant had not been asked by the grandparents to contribute to the child's support during the period charged in the information, although, as has been stated, defendant agreed some years before to pay them $10 per month for that purpose and paid this sum for four months but made no further payments. The complaining witness, Mrs. Hartman, testified that, in the latter part of 1911, she wrote defendant for money for the child's support then in the keeping of its grandparents, to which he replied that he would take the baby "and support her at his home and keep her until I

wanted her, but that was not the ruling of the court I was supposed to have her and I could not afford to pay for her board and have her with me. . . . Q. And from that time until this you have never made any demand on him for support? A. No. Q. And you think that was about November, 1911? A. Well, I couldn't swear to that. Q. Anyway it was last fall? A. Yes, sir, last fall. . . . Q. Then from the fall of 1911 to the time you started the suit (which was in September, 1912), you never even so much as asked him for support for the child any more did you? A. No, not that I can remember.'' She testified that there was an understanding between herself and husband before the divorce decree was entered that she would not call upon him for money until she needed it. They were talking about the divorce and she did not want him to oppose it and he insisted as a condition of not doing so that nothing should go in the decree about support. She refused to agree that no provision should be made for her support and insisted on the decree giving her ten dollars, because, as she said, she could not trust his word, but she agreed not to call on him for it unless she needed it. This agreement cannot be taken as affecting in any way the terms of the decree and it is significant only as tending to excuse defendant for omitting to support the child except when called upon to do so.

Defendant cites several cases which lend support to his contention.

A Missouri statute (Rev. Stats. 1909, sec. 4492) provides that if any father without lawful excuse fails to provide such infant with necessary food, etc., he shall be punished. Defendant and his wife separated, the wife going to her father's house taking with her one child of the mariage, and another was born at the house of the wife's father, and both children were there supplied with all necessary food, etc. Defendant, after the separation, contributed nothing to their support. It was held that "necessary" food, clothing and lodging, used in the statute, is food, etc., which the infant actually needed at the time; and that as the infant children were receiving necessary food, etc., defendant was not guilty. (*State* v. *Thornton*, 232 Mo. 298, [32 L. R. A. (N. S.) 841, 134 S. W. 519].) Said the court: "The legislature did not enact this law for the purpose of punishing the parents for failure to

do their duty as such. Such a purpose would smack too strongly of paternal government. The only legitimate object of the statute is to secure to infants, who are in future to become citizens of the state, proper care; such care as is necessary to protect their lives and health. In other words, to prevent destitution. It follows from the foregoing that if the infant children are receiving food, clothing and lodging from any source, there is no occasion for the state to interfere by penal law or otherwise." Again: "The statute penalizes the refusal of the father to supply necessary food, etc. Under the law pertaining to necessaries, a necessary article is one which the party actually needs. It is not enough to show that the article is *per se* classed as necessary, such as food and clothing. It must be actually needed at the time." Some other cases to like effect are cited.

We are urged to give a construction to section 270 of the Penal Code in harmony with these decisions. We are not prepared to accept unqualifiedly the doctrine of the case cited, and, as we think the case in *In re McMullin* is decisive of the question here, we express no opinion as to the scope and meaning of section 270.

The order is reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1913.