[S. F. No. 9524. In Bank.—December 6, 1920.]

## THE PACIFIC GOLD DREDGING COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] DIVORCE — PARENT AND CHILD — AWARD OF CHILD TO MOTHER — SILENCE OF DECREE AS TO SUPPORT—NONLIABILITY OF FATHER.— A decree of divorce giving the custody of the child of the marriage to the mother and containing no requirement of contribution to its support by the father relieves the father from all legal responsibility for support and removes all relation of dependency for the time being.

[2] ID.—PARENT DEPRIVED OF CUSTODY—NONLIABILITY FOR SUPPORT— NATURE OF EXEMPTION.—When a parent is deprived of the custody of his child, and, therefore, of its services and earnings, he is no longer liable for its support and education, but the exemption is not unconditional and may not be permanent in view of the power reserved to the court in divorce proceedings to modify its orders concerning the support of the children of the marriage.

[3] ID.—SUPPORT AND EDUCATION OF MINOR BY PARENT ENTITLED TO CUSTODY—MEANING OF CODE PROVISION.—The requirement of section 196 of the Civil Code that the parent entitled to the custody of a child must give him support and education suitable to his circumstances means no more than that the parent who is entitled to the custody is primarily liable for its support and education, and between such parent and the one who has been deprived of such custody the latter is absolved from liability, in the absence of any decree of court requiring contribution to such maintenance.

[4] ID.—ABANDONMENT OF CHILD—VOLUNTARY RESUMPTION OF LEGAL RESPONSIBILITY FOR SUPPORT—RIGHT OF PARENT.—A father who has been deprived of the custody of his minor child by a decree of divorce has the right to voluntarily resume responsibility for its support upon the abandonment of the child by its mother to whom the custody had been awarded.

[5] WORKMEN'S COMPENSATION ACT — CHILD DEPENDENT UPON DECEASED EMPLOYEE.—Under section 14 of the Employers' Liability Act, providing that a child under eighteen years of age is conclusively presumed to be dependent on the parent legally liable

1. Liability of father for support where custody of children is awarded mother by divorce decree containing no provision for maintenance, notes, 7 Ann. Cas. 903; 14 Ann. Cas. 255; Ann. Cas. 1913C, 296; Ann. Cas. 1915D, 813.

for its maintenance, there being no surviving parent, where the deceased employee was divorced and the custody of his son awarded to the mother, and she afterward abandoned it and the father voluntarily resumed legal responsibility for its support, the child was dependent upon him, although at the time of his death the child was working for a third person.

PROCEEDING on Certiorari to review an award of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

R. P. Wisecarver and Redman & Alexander for Petitioners.

A. E. Graupner for Respondents.

SLOANE, J.—This is a proceeding to review the action of the Industrial Accident Commission in awarding compensation to the respondent Kenneth Frank Fruit, a minor, fifteen years of age, under the Workmen's Compensation Act of 1917, [Stats. 1917, p. 831], on account of the accidental death of his father, John A. Fruit.

The commission awarded the maximum amount for total dependency, being three times the annual earnings of the father. The only points in controversy arise upon the question of dependency of the minor upon his father. It is urged that dependency was not shown, either actual or presumptive.

The undisputed facts disclose that the mother of the minor had, on May 16, 1908, procured a decree of divorce from John A. Fruit for extreme cruelty and habitual intemperance, and the custody of the minor son was therein awarded to the mother on the finding that she was a fit and proper person to have such custody and that the father was not.

About two years later the mother placed the boy, the respondent here, in an orphanage in Portland, Oregon, where they resided when the decree of divorce was obtained, and then disappeared, and since that time neither the directors of the orphanage nor members of her family have had any information or knowledge of her existence or whereabouts.

About the time of the divorce the father also disappeared and it was not until some ten years later that the son had

any knowledge of or connection with him. In 1918, through a letter from an uncle, the son located his father, who was then employed with a dredging company near Trinity Center, Trinity County, California. As a result of correspondence between them the father sent Kenneth a present of a watch and contributed money to him on several occasions. Subsequently, about April, 1918, the father outfitted the boy with clothing and sent him money for his traveling expenses from Oregon to Trinity County, where he joined his father in May, 1919. They lived together in a cabin on the properties of the dredging company during May, June, and July of 1919, the father providing the boy with his board, clothing, and spending money. From the conversations and relations between them it was apparent that the father manifested his intentions of resuming parental relations with his son and affording him support and education. It was tentatively agreed between them that the father would give up his present employment and move to the town of Westwood, in Lassen County, where he would obtain work and send the boy to school. Before any change of location was made, and three or four days before the father's death, Kenneth, apparently with his father's consent, left the cabin where they were living and went to Trinity Center, some two or three miles distant, where he entered the home of a Mrs. Miles, with the understanding that he was to work for his board, and at the beginning of the school term go to school. He was also to receive one dollar per day for extra work that Mrs. Miles had in contemplation. No definite duration for this arrangement with Mrs. Miles was agreed upon.

This was the situation of the parties when the father met with the accident resulting in his death.

[1] It is probably clear that the decree giving the custody of the boy to the mother relieved the father from all legal responsibility for support of his son and removed all relation of dependency, at least for the time being. Section 196 of the Civil Code provides that ''the parent entitled to the custody of a child must give him support and education suitable to his circumstances.'' No requirement was made in the decree that the father should contribute anything to the boy's maintenance. [2] When a parent is deprived of the custody of his child, and, therefore, of its services and earnings, he is no longer liable for its support and education. (*Self-*

*ridge* v. *Paxton,* 145 Cal. 713, [79 Pac. 425]; *Ex parte Miller,* 109 Cal. 648, [42 Pac. 428]; *McKay* v. *McKay,* 125 Cal. 65, [57 Pac. 677]; *Matter of McMullin,* 164 Cal. 504, [129 Pac. 773]; *People* v. *Hartman,* 23 Cal. App. 72, [137 Pac. 611].) This exemption, however, is not unconditional and may not be permanent. In divorce proceedings power is reserved by section 138 of the Civil Code to the court, at the hearing of the case or at any time during the minority of children of the marriage, to "make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and it may at any time modify or vacate the same"; and section 139 of the Civil Code provides that "where a divorce is granted for an offense of the husband the court may compel him to provide for the maintenance of the children of the marriage," and "may, from time to time, modify its orders in these respects," and this irrespective of the fact that the control and custody of the children are taken from him. Similarly, section 199 of the Civil Code provides for an action between husband and wife without divorce to determine the custody of children of the marriage, with authority in the court to make such order in the decree as to their support, education, and maintenance as may be just, and to amend, vary, or modify such decree as the natural rights of the parties, including the children, may require.

[3] The requirement of section 196 of the Civil Code means no more than that the parent who is entitled to the custody of the child is primarily liable for its support and education, and between such parent and the one who has been deprived of such custody the latter is absolved from liability, in the absence of any decree of court requiring contribution to such maintenance. It is true that it has been held that a father deprived of the custody of his child in divorce proceedings without requirement that he contribute to its support is not liable to a third party furnishing such child with the necessaries of life (*Selfridge* v. *Paxton, supra*), but, under section 207 of the Civil Code, third persons seeking such recovery are limited in their right of action to the parent in charge of the minor. It is also held, in *People* v. *Hartman, supra,* that the defendant was not liable to prosecution, under section 270 of the Penal Code upon a charge of willfully, unlawfully, and feloniously failing to furnish

necessary food, clothing, shelter, or medical attendance for his infant child. In that case the infant had been given into the custody and control of the mother in a divorce action, without a requirement that the father contribute to its support, and no showing was made that its legal custodian was not abundantly able to care for it. In fact, the opinion states that "there is no evidence that the child failed to receive all 'necessary food, clothing, shelter or medical attendance.' " We find no authority for holding that, as between parent and child, the father is absolved from his legal duty to provide support to his minor child who has no other source of maintenance, because, on account of his own fault, he has been deprived of the custody of such child. Both a legal and moral obligation rests upon a father to support his minor children. And while, as between himself and third parties, that obligation may be shifted in proceedings of divorce or guardianship, and he may by misconduct forfeit his right to the custody of his child, it may be doubted if by such proceedings, to which he is not a party, a minor can be deprived of his natural right to turn to his father for maintenance, if the substituted source of supply fails. It has been held that such right to look to a father for maintenance cannot be taken from the infant by contract between the parents (*Fernandez* v. *Aburrea,* 42 Cal. App. 131, [183 Pac. 366]), and it certainly would be a reproach upon the law if a father, by his own misconduct making him an unfit custodian of the child, could absolve himself from legal responsibility for its support. He, at least, may voluntarily resume his legal responsibility.

[4] Conceding, in this case, that the minor was not a dependent upon his father during the period he remained in the custody of his mother, there was nothing in the legal status of the parties at the time Kenneth joined his father in California to prevent the latter from voluntarily resuming responsibility for his son's support. It has been repeatedly held by this court that on the death of the mother, to whom the custody of a child has been given in divorce proceedings, the right to such custody reverts to the father. (*Schammel* v. *Schammel,* 105 Cal. 258, [38 Pac. 729]; *Matter of Allen's Estate,* 162 Cal. 625, [124 Pac. 237]; *Bell* v. *Krauss,* 169 Cal, 387, [146 Pac. 874].) It is urged that the father in this instance has been divorced for cruelty and intemperance and

adjudged an unfit custodian of his child.    On the other hand, the mother has been shown to have abandoned the child. Under section 224 of the Civil Code neither of them, perhaps, could have interfered with the adoption of Kenneth by a third party, but nobody has manifested any desire to adopt him.    Is he to be left a waif in the community with no right to parental care because both his parents have been derelict in their duty toward him?

The mother abandoned him two years after her divorce by leaving him in an orphan asylum, where he remained several years without provision for his support.    She is presumptively dead, not having been heard from for more than seven years.    (Code Civ. Proc., sec. 1963, subd. 26.)    The evidence on this point is not very full, but Kenneth testified that both he and his mother's other relatives had made persistent search and inquiry for her without avail.

It is clear that the boy was without means of support and had no legal guardian.    Whatever the father's rights were to his son's custody, his duty to provide for him was clear, both legally and morally.    The commissioners were justified by the evidence on this point in concluding that the father had voluntarily resumed his parental relations and obligations and had taken the boy to live with him and assumed the burden of his maintenance, education, and support.    This being the fact, the relations of parent and child had been restored.    The condition of dependency existed at the time of the father's death as though it had never been disturbed, unless it was again suspended by the fact that the boy had taken up a fortuitous residence and employment outside the father's home some three or four days before the latter's death.

In considering the relations of the parties at the time of the father's death, if we accept the fact that the duty of support and maintenance had been restored, we must treat the situation precisely as if this relation had never been disturbed.    Would it, under the usual relationship between a father and his fifteen year old son, be considered for a moment that the status of dependency had been destroyed or interrupted by the fact of such a casual outside employment as is shown here?    In any event, the provisions of the Compensation Act are conclusive on this point.    Section 14 of the Employers' Liability Act provides: "(a) The following

shall be conclusively presumed to be wholly dependent for support upon a deceased employee: . . . (2) A child or children under the age of eighteen years, . . . upon the parent with whom he or they are living at the time of the death of such parent or for whose maintenance such parent was legally liable at the time of death, there being no surviving dependent parent.''

[5] Assuming that the first condition of this conclusive presumption is avoided by the temporary residence and employment of Kenneth with Mrs. Miles, we have left the alternative condition, that of a minor under eighteen years of age, whose father at the time of his death was liable for the minor's maintenance, with no other dependent parent. We are of the opinion that the fact of the child being left without any other means of support, whether by abandonment by or death of his mother, restored him to his right of dependency upon the father; and that, in any event, the Industrial Accident Commission was justified in reaching a conclusion favorable to the minor from the evidence showing a voluntary resumption of his parental obligations by the father. The only issue presented here is on the question of dependency, and the findings of the commission expressly cover that issue.

The award is affirmed.

Lennon, J., Wilbur, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.