[Civ. No. 43518. First Dist., Div. Two. Mar. 23, 1979.]

LENICE RENEE RICHARDS, Plaintiff and Respondent, v. CARL NEPHI GIBSON, Defendant and Appellant.

**COUNSEL**

Maynard & Rippin and Eugene Rippen for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Jamie Jacobs-May, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KANE, J.—Defendant Carl Nephi Gibson (hereafter appellant or Carl) appeals from the trial court's order awarding child support to petitioner Lenice Renee Richards (hereafter respondent or Lenice) and $2,800 arrears in favor of copetitioner Utah State Department of Social Services (hereafter State of Utah) in an action brought under the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (Code Civ. Proc., § 1650 et seq.; hereafter URESA). The facts pertinent to the present appeal may be set out as follows:

Carl and Lenice are ex-spouses. They were married in Ely, Nevada, on October 17, 1956, and divorced in 1964. The interlocutory decree of divorce rendered by a district court in Utah gave the custody of the three minor children (Annette, Timonthy and David) to Lenice, and ordered appellant father to pay child support in the sum of $50 per month for each child. Appellant moved to California. Subsequently both Carl and Lenice remarried.

A substantial new development occurred in the year 1973. Respondent experienced marital problems with her new husband. Thereupon, the two minor children, Timothy and David, left their mother and settled down with their father in California. Thereafter, Carl sought a modification of the Utah decree in California. On April 3, 1973, the Santa Clara Superior Court issued an order (action No. 278301, hereafter California Custody Decree) awarding the care, custody and control of Timothy and David to Carl, with reasonable visitation rights to Lenice.

Pursuant to the California Custody Decree, at Thanksgiving in 1973, the children were allowed to, and did in fact visit their mother in Utah. However, in blatant violation of the California Custody Decree, respondent refused to return the children to their father after the holiday. The illegal act of respondent triggered a series of legal steps on the part of appellant. Soon after Thanksgiving, Carl went to Utah to seek the enforcement of the California Custody Decree. At the ensuing hearing attended by both parties, the Utah court ordered Lenice to return the children to appellant, which she refused. In April 1974, Carl went back to Utah in an attempt to return the children to California. The Utah court once more ordered respondent to release the children and return them to their father. Instead of complying with the second court order, Lenice ran off from the courtroom, taking the children with her. The third legal step was taken by Carl on July 15, 1974. On that day, through his Utah attorney, Ray H. Ivie, he moved the court for an order to show cause why respondent should not comply with the California Custody Decree. On July 25, 1974, Lenice filed objection to the order to show cause, contending inter alia that the children did not desire to live with their father any longer, and that due to a number of reasons the custody of the children should be awarded to her. On the following day, July 26, 1974, the Utah court ordered that the children be returned to the custody of the father in accordance with the California Custody Decree. At the same time the Utah court set the time to hear respondent's petition for modification to September 6, 1974. The record, however, conclusively shows that the proceeding to modify the California Custody Decree was

not pursued by Lenice, and that the matter was stricken from the Utah court record upon the request of counsel.

The relevant facts additionally reveal that during the period spanning May 1974 and August 1976, Lenice received about $3,543 in public assistance from the State of Utah. On September 17, 1976, a joint petition was filed pursuant to URESA in the Utah court, in which Lenice demanded future child support payments while the State of Utah requested the repayment of a portion of the state funds expended for the public assistance of Lenice and the children. On September 27, 1976, the California superior court issued an order to show cause, directing appellant to appear on November 19, 1976, and show cause why he should not pay for the support of his dependent children. After a hearing held on May 27, 1977, and after receiving evidence, the California superior court found that appellant owed a duty of support to his dependent children; that the sum of $2,800 paid by State of Utah to respondent was a reasonable sum contributed to the support and maintenance of the dependent children; and that appellant had the present ability to pay the amount of both the arrears and the future child support payments. Consistent therewith, the court issued an order directing Carl to pay future support for his two dependent children in the monthly sum of $125, and to reimburse State of Utah for the public funds expended in the amount of $2,800.

As the provisions of the order pertaining to future child support payments were modified since the filing of the notice of appeal, the fundamental issue presented for appellate review is whether the trial court was justified in directing appellant to reimburse State of Utah for the public funds granted for the support and maintenance of the dependent children of the parties. ■ A careful analysis of the pertinent legal and equitable principles compels the conclusion that in the factual situation here present State of Utah as a third person is not entitled to recover the funds in question from appellant father, and as a consequence the court order directing otherwise cannot stand.

As a threshold matter, we must emphasize that the decisive document determining the support duties of the spouses is the California Custody Decree, which, in spite of Lenice's abortive attempt to modify it in the Utah court, has remained valid and effective. As pointed out earlier, this decree trusts the care, custody and control solely to appellant father. ■ As an additional prefatory matter, it also bears emphasis that where, as here, the custody of the minor children is awarded to one

parent, the parent so vested with the right of custody is primarily liable for the support and education of the children in the absence of a court decree providing otherwise (Civ. Code,[1] § 196;[2] *Pacific G.D. Co.* v. *Industrial Acc. Com.* (1920) 184 Cal. 462, 464-465 [194 P. 1, 13 A.L.R. 725]; *Lewis* v. *Lewis* (1917) 174 Cal. 336, 339-340 [163 P. 42]; *Selfridge* v. *Paxton* (1905) 145 Cal. 713, 716-717 [79 P. 425]; *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 855 [146 Cal.Rptr. 26]).

The rule cited above, however, does not render the custodial parent automatically liable for support or other necessaries furnished by a third person to his child or children. Section 208 explicitly states that a parent is not bound to compensate a stranger for the support of a child who has abandoned the parent without a just cause. Moreover (and even more importantly), section 207 spells out that a parent may be held liable for the necessaries provided to the child by a third person only if he *neglects* to supply such necessaries to the child.[3] In accordance with the statute, the case law explains that "where a father has supplied his child with necessaries, or is ready to supply them, he cannot be held liable to a third person for necessaries furnished to the child without his knowledge." (*Matter of Ross* (1907) 6 Cal.App. 597, 601 [92 P. 671]; see also 32 Cal.Jur.3d, Family Law, § 290, p. 332.)

The record here is totally devoid of any data or facts showing that Carl neglected the children and/or that he failed in any respect to supply them with necessaries or to take care of their need. Just the opposite, the facts convincingly demonstrate that the welfare payments made by State of Utah became necessary merely because respondent mother, in violation of the California Custody Decree, kept the children illegally with her in Utah without being able to provide them with the necessities of life. Furthermore, appellant father acted with utmost legal diligence in attempting to retrieve the children from their mother and bring them back to California where they would have been provided with food, shelter, and parental care in full compliance with the court decree and without the necessity of placing the burden of their sustenance on the

---

[1] Unless otherwise indicated, all references will be made to the Civil Code of California.

[2] Section 196 provides that "*The parent entitled to the custody of a child must give him support and education suitable to his circumstances.* If the support and education which the father of a child is able to give are inadequate, the mother must assist him to the extent of her ability." (Italics added.)

[3] Section 207 provides *in haec verba*: "*If a parent neglects to provide articles necessary for his child* who is under his charge, according to his circumstances, *a third person may in good faith supply such necessaries, and recover the reasonable value thereof from the parent.*" (Italics added.)

shoulder of the taxpayers. At the same time, there is no showing in the record whatsoever that appellant knew of the state welfare payments given to Lenice. In point of fact, Carl testified at the 1977 California court hearing that, due to the fact that the mother had absconded with the children, he did not know about their whereabouts since the 1974 Utah court proceeding. Thus, appellant's cause falls squarely within the purview of section 207 and *Matter of Ross, supra,* 6 Cal.App. 597, and enjoys unquestionable exemption from the legal claim of State of Utah.

At the same time, State of Utah cannot prevail upon equitable grounds either. The potential theory of restitution or unjust enrichment is based upon so-called quasi-contract or contract implied in law (*Kossian* v. *American Nat. Ins. Co.* (1967) 254 Cal.App.2d 647, 650 [62 Cal.Rptr. 225]; *Branche* v. *Hetzel* (1966) 241 Cal.App.2d 801, 807 [51 Cal.Rptr. 188]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 28, p. 45). ■ The case law, however, makes it clear that where, as here, the parent is willing to support his minor child, the duty of support is to be performed in the home of such parent, and no agreement to compensate a third party for such support will be or can be implied (*Matter of Ross, supra,* 6 Cal.App. at p. 601; 32 Cal.Jur.3d, § 290, p. 332).

■ We must emphasize our conclusion that State of Utah is not entitled to recovery from appellant does not mean that the state is deprived of all legal remedy to recoup the funds advanced to respondent. Both the statute and the case law make it unmistakable that where, as in the present instance, the noncustodial parent takes the child away from the custodial parent and undertakes to provide support and maintenance to the child on a voluntary basis without an agreement for compensation, the custodial parent's duty to support the child under section 196 terminates, and the noncustodial parent becomes solely liable for the support of the child (§ 208; *Pacific G.D. Co.* v. *Industrial Acc. Com.,* *supra,* 184 Cal. at pp. 464-465). Since it is thus clear that in this type of situation the obligee child may look only to the noncustodial parent for providing care and support, the state which occupies the same legal posture as an individual obligee (Code Civ. Proc., § 1671)[4] may—and indeed should—turn to the same obligor in order to seek reimbursement for the welfare funds spent for support.

---

[1] Code of Civil Procedure, section 1671, provides that "If a state or a political subdivision furnishes support to an individual obligee, it has the same right to initiate an action under this title as the individual obligee for the purpose of securing reimbursement for support furnished and of obtaining continuing support."

Lastly, we briefly observe that the authorities relied upon by respondent (i.e., Code Civ. Proc., § 1964; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289 [132 Cal.Rptr. 261]) embrace a different factual situation and do not involve the special issue here presented, that is, the reimbursement of a *third party* for support and maintenance supplied to children who, in violation of a custody decree, are held by a welfare recipient noncustodial parent. Consequently, those authorities are clearly beside the point and possess no controlling effect in the instant case.

In light of our conclusion, the additional issues raised by the parties need not be decided.

The order is reversed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied April 20, 1979, and respondent's petition for a hearing by the Supreme Court was denied May 17, 1979.