[Civ. No. 54140. First Dist., Div. Three. Oct. 14, 1983.]

JOHN W. CARR, JR., Plaintiff and Appellant, v.
NANCY JEAN MARSHMAN, Defendant and Respondent.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A. Brady, Ann K. Jensen and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Appellant.

Jeanne M. Buckley for Defendant and Respondent.

OPINION

**SCOTT, Acting P. J.**—In an action initiated under the Revised Uniform Reciprocal Enforcement of Support Act (Code Civ. Proc., § 1650 et seq.; hereafter RURESA), the trial court held that Nancy Jean Marshman had no present obligation to pay child support. John William Carr appeals.

I

Marshman and Carr were divorced in 1976. The interlocutory decree rendered by a Sonoma County court gave her custody of the couple's two

minor children. That summer, the children went to Michigan to visit Carr, and were not returned.

In 1979, Carr sent the children to visit their mother in California for two weeks, after she paid for their round-trip tickets and promised to send the children back to Michigan. At the time, she knew she had legal custody in Sonoma County. Carr told her he had legal custody in his state, but she had never been served with any documents to that effect. She sent the children back to Michigan because she was concerned about their stability. "It seemed like they were being well cared for and it didn't seem fair to uproot them."

Sometime in 1980, Marshman learned that Carr was receiving public assistance in Michigan. She saw an affidavit signed by him stating that if she sent money, he would send the children. She told him she would send airline tickets for the children; in response, he said he would never let her have the children, and that if she tried to get them, he would move across the border into Canada.

She didn't have money to hire a Michigan attorney, and never consulted the district attorney's office about a possible child stealing charge. At some point she did consult a California lawyer who tried unsuccessfully to get a stipulation that Carr would send the children back.

In 1980, Carr petitioned in Michigan under RURESA for support for the children and assigned any court-ordered support payments to the Michigan Department of Social Services. After a hearing in January 1981 in Sonoma County Superior Court, the trial court concluded that Marshman was not legally obligated under the circumstances to reimburse Michigan for child support.

## II

■■■ Appellant contends that the trial court erred, because interference with a child custody order is not a defense in a RURESA action to a child support obligation.

■■■ Although initially enacted for the purpose of enforcing support obligations of deserting fathers, RURESA applies to any situation in which there is a breach of duty of support. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 650, fn. 3 [165 Cal.Rptr. 877, 612 P.2d 967], citing Brockelbank & Infausto, Interstate Enforcement of Family Support (2d ed. 1971).) The act provides no forum for litigating disputes over interference with custody and visitation rights (*id.,* at pp. 651-652), and in some instances, may even

facilitate one parent's destruction or impairment of the other parent's rights. (*In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261].)

Section 1694 of RURESA provides in relevant part: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." In *Moffat, supra,* 27 Cal.3d 645, the court held that section 1694 bars the assertion of interference with visitation rights as a defense in a RURESA proceeding in which the duty of support is being determined. (*Id.,* at p. 659.) A mother had obdurately refused the father his visitation rights and had even been held in contempt for violating visitation orders; she moved to another state, where she applied for and received public assistance. Nevertheless, she was not estopped from seeking child support under RURESA.[1] While the court did not condone her conduct, "the child's need for sustenance" was the "paramount consideration." (*Id.,* at p. 651.) The court also stressed that although the result might seem unjust from the father's point of view, he had remedies and sanctions apart from RURESA. (*Id.,* at p. 652.)

While Moffat involved a violation of visiting rights by a custodial parent, the plain language of section 1694 seems equally applicable to a violation of a custody order by the noncustodial parent. Our conclusion is reinforced by a comparison of the language of section 4382 of the Family Law Act (Civ. Code, § 4000 et seq.), which provides: "The existence or enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall not be affected by a failure or refusal by the custodial parent to implement any rights as to custody or visitation granted by a court to the noncustodial parent." Section 1694 of RURESA is not similarly limited to conduct by the custodial parent; instead, it provides broadly: "The determination . . . of a duty of support . . . is unaffected by *any interference . . . with rights of custody or visitation . . . .*" (Italics added.) █ Accordingly, we must conclude that the trial court erred when it held that Carr's interference with Marshman's custody rights operated as a defense in this RURESA proceeding in which her duty of support was to be determined.

Attempting to avoid the unmistakable language of section 1694, respondent urges that while interference with custody may not be a defense to a

---

[1] However, the court reversed the lower court's order granting support on other grounds. After the mother was held in contempt for refusing visitation rights, a trial court had suspended child support payments as punishment for her contempt. Although that order was erroneous, it was final, and the Supreme Court gave it res judicata effect. As long as the contempt order remained outstanding and unmodified, the father had no existing support duty that could serve as a basis for a RURESA action. (*Moffat v. Moffat, supra,* 27 Cal.3d at pp. 653-658.)

child support obligation, she had no such obligation. She urges that the only duty of support was appellant's under the decree of dissolution.

However, a decree of dissolution which requires one parent alone to support the children does not abrogate the duty of the other parent to support those children. (*State of Florida* ex rel. *Dept. of Health & Rehabilitative Services* v. *Vernon* (1982) 138 Cal.App.3d 827, 830-831 [188 Cal.Rptr. 322].) In that case, after a father was awarded custody of his children in a California dissolution and ordered to support them, he placed the children with his mother in Florida and disappeared. As the grandmother was unable to provide financially for the children, Florida did so under its aid to families with dependent children program. Florida then sought reimbursement for future support in a RURESA action against the children's mother, a California resident.

The appellate court affirmed the trial court's order finding that the mother had a legal duty to support the children, even though the decree of dissolution obligated only the father for their support. The court held that as to the children, Civil Code section 196, as amended in 1981, imposes a "sort of joint and several obligation" on both parents for support. While the judgment of dissolution might have entitled the mother to reimbursement from the father for sums she was obliged to pay for the children, it did not abrogate her duty to support them. Moreover, under section 1671 of RURESA, the state occupied the same legal posture as the children, and was entitled to seek reimbursement from either parent for the funds spent for their support. (*State of Florida* ex rel. *Dept. of Health & Rehabilitative Services* v. *Vernon, supra*, 138 Cal.App.3d at pp. 829-830.)

Respondent also urges that *Richards* v. *Gibson* (1979) 90 Cal.App.3d 877 [153 Cal.Rptr. 561] supports the trial court's ruling. We disagree. In *Richards*, father, a California resident, had custody of the children. Mother, in violation of the California decree, refused to return the children from Utah after a holiday visit. Unlike respondent in this case, father then obtained several court orders directing the return of the children, which mother refused to obey. A petition was then filed pursuant to RURESA seeking reimbursement from the father for public assistance paid by Utah for the support of the children. (*Id.,* at pp. 880-881.)

The *Richards* court held that under those circumstances, Utah could not recover funds from the father. Relying on Civil Code section 207[2] and in

---

[2]Civil Code section 207 provides: "If a parent neglects to provide articles necessary for his child who is under his charge, according to his circumstances, a third person may in good faith supply such necessaries, and recover the reasonable value thereof from the parent."

*Matter of Ross* (1907) 6 Cal.App. 597 [92 P. 671], the court declared that where a father is ready to supply his child with necessaries, he cannot be liable to a third person for necessaries furnished to the child without his knowledge. The court found the record devoid of any facts indicating that the father had neglected his children within the meaning of section 207. Instead, he had acted with "utmost legal diligence" attempting to retrieve them, and was ready to support them. Moreover, he did not know they were receiving public assistance. Therefore, the court concluded, he was exempt from Utah's legal claim. (*Richards* v. *Gibson, supra,* 90 Cal.App.3d at pp. 882-883.)

The *Richards* court did acknowledge section 1671 of RURESA, which provides that a state which furnishes support to an obligee has the same right as the obligee to initiate an action for reimbursement for support furnished and for continuing support. Nevertheless, relying on Civil Code section 208,[3] the court declared that when a noncustodial parent takes a child from the custodial parent and voluntarily supports the child without an agreement for compensation, the custodial parent's duty to support the child under Civil Code section 196 terminates. The child may then look only to the noncustodial parent for support; therefore the state can only turn to that same parent for reimbursement for welfare funds spent on that child. (*Richards* v. *Gibson, supra,* 90 Cal.App.3d at p. 883.) Finally, section 1694[4] of RURESA was inapplicable, the court added without discussion, because it does not involve the "special issue" of reimbursement of a third party for support of children who, in violation of custody decree, are held by a welfare recipient noncustodial parent. (*Id.,* at p. 884.)

*Richards* is not controlling here. First, we agree with appellant that *Richards* is factually distinguishable from this case. There the California father had taken several legal steps to have his children returned to him, whereas in this case respondent took no legal action against her former husband. In addition, she returned the children to him in Michigan, seemingly consenting to his custody of them.

Moreover, we believe that the *Richards* court erred when it concluded that RURESA was inapplicable to its facts. As we have explained, that court reasoned that when a noncustodial parent took the child and voluntarily assumed its support, the custodial parent's statutory duty under section 196

---

[3]At that time, Civil Code section 208 provided: "A parent is not bound to compensate the other parent, or a relative, for the voluntary support of his child, without an agreement for compensation, nor to compensate a stranger for the support of a child who has abandoned the parent without just cause."

[4]In what we assume must be a printer's error, the *Richards* opinion actually referred to Code of Civil Procedure section 1964 (a nonexistent section), rather than section 1694.

to support terminated, so that the child could look only to the noncustodial parent for support. (*Richards* v. *Gibson, supra,* 90 Cal.App.3d at p. 883.) However, even under the version of section 196 in effect when *Richards* was decided, the view that a custodial parent who had been deprived of the custody of his child owed no duty of support *to that child* was incorrect. (See, e.g., *Kresteller* v. *Superior Court* (1967) 248 Cal.App.2d 545, 546-549 [56 Cal.Rptr. 771]; *Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 841 [142 Cal.Rptr. 449]; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941].) Accordingly, while Civil Code section 208 may have precluded reimbursement by a parent to another person who voluntarily assumed the support of a child, it did not abrogate the duty of that parent as to the child. As we have already discussed, under RURESA, if a duty is owed to the child, the state occupies the same legal posture as the child and can turn to the same obligor to seek reimbursement for the child's support. (Code Civ. Proc., § 1671.)

We note also that in 1982, section 208 was amended and now expressly provides: "Nothing in this section shall be construed so as to relieve the parent of the obligation to support a child during any period in which the state, county, or other governmental entity furnishes support for the child." (Stats. 1982, ch. 1276, § 1, p. 4710.) With this amendment, the Legislature has clarified that section 208 simply does not preclude a governmental agency from seeking reimbursement for child support in circumstances such as those at issue. Although respondent argues that the purpose of the amendment was only to allow a county to be reimbursed for aid paid to children placed outside the home through juvenile court proceedings, nothing in its plain language so limits its applicability, and we must assume that the Legislature was aware of the *Richards'* court's construction of section 208 when it enacted the amendment. (See *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

Finally, respondent argues that reversing the trial court's order would in effect countenance child stealing. Under the facts of this case, her argument is unpersuasive. While we obviously do not condone appellant's violation of the custody decree, there is no indication in the record that respondent ever commenced any action to enforce that decree through the Uniform Child Custody Jurisdiction Act (see Civ. Code, § 5150 et seq.; Mich. Comp. Laws, § 27A.651 (1976) (Mich. Comp. Laws Ann., § 600.651 et seq.)), which requires summary enforcement of out-of-state custody decrees (see Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA* (1981) 14 Fam.L.Q. 203 (1981, ABA section of Fam. Law)).

Moreover, the fact that one parent's interference with the other's custody rights is not a defense in a RURESA proceeding does not mean that the Legislature approves of child stealing. Rather, it reflects a legislative policy determination that the child's need for sustenance is paramount, and that disputes over interference with custody and visitation rights must be litigated in another forum. (See *Moffat* v. *Moffat, supra,* 27 Cal.3d 645, 651-653.)

Judgment is reversed. The matter is remanded to the trial court for a determination of respondent's ability to support her children.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied November 10, 1983, and respondent's petition for a hearing by the Supreme Court was denied January 5, 1984. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.