[L.A. No. 31168. July 10, 1980.]

TOMOYO MOFFAT, Plaintiff and Respondent, v.
BURNHAM MOFFAT, Defendant and Appellant.

COUNSEL

Young & Young and Walter H. Young for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Andrew D. Amerson and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—In this proceeding under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA),[1] we must decide whether a custodial parent whose right to enforce child support payments has been erroneously suspended by a contempt order for her willful denial of the noncustodial parent's visitation rights is entitled to maintain an independent action to compel the payment of child support.

Burnham and Tomoyo Moffat were married in 1962 and had two children: Susan, born in 1962, and Michelle, born in 1966. The couple separated during 1971, and in January 1972 an interlocutory judgment

---

[1] Code of Civil Procedure section 1650 et seq. All statutory references are to the Code of Civil Procedure unless otherwise indicated.

of dissolution was entered. Mrs. Moffat was awarded custody of the children, subject to reasonable visitation by their father. He was ordered to pay child support of $300 per month for each child, together with $400 per month spousal support for a period of five years and additional payments in settlement of community property.

Throughout the dissolution proceedings and immediately following entry of the interlocutory judgment, the father regularly exercised his visitation rights with the mother's cooperation. In June 1972, however, she filed for modification to terminate his visitation rights, an act he asserts was a retaliatory measure to counter his action filed two months earlier to secure her compliance with the property settlement provisions of the dissolution decree. In the modification proceedings Mrs. Moffatt accused her former husband of sexually molesting their daughters and of lacking control over his "sexual aberrations"; he was consequently enjoined from visitation pending a hearing in the matter.

A final judgment of dissolution incorporating the provisions of the interlocutory judgment was entered on September 12, 1972. Five months later Mrs. Moffat's request for termination of visitation rights was heard, and the ensuing order reinstated the father's rights, expressly finding that none of the child molestation allegations were true. Mrs. Moffat nevertheless thwarted his attempts to exercise visitation rights by refusing him access to the children. In July 1973 he obtained a habeas corpus order to enforce his six-week summer visitation rights, and in August she was adjudged in contempt of that order. The judge presiding over the contempt proceedings suspended imposition of sentence and instead ordered Mr. Moffat excused from spousal and child support payments until Mrs. Moffat complied with the visitation order.

Since then Mrs. Moffat has systematically endeavored to circumvent the visitation order through an unrelenting variety of legal proceedings. These include a petition to give up her children and to have them declared wards of the juvenile court, a proceeding in which she reasserted the molestation accusation previously found to be untrue; a motion to terminate the July visitation order; and criminal charges against Mr. Moffat for failure to provide (Pen. Code, § 270).[2] None of her efforts were successful; in affirming the order dismissing the criminal charges,

---

[2]The record indicates Mrs. Moffat twice unsuccessfully sought a complaint for failure to provide. It was only after she secured employment with the district attorney's office that the complaint was issued.

the appellate department of the superior court noted the dismissal rested, in part, on the trial judge's conclusion that the charges were filed for harassment purposes and constituted an abuse of process by Mrs. Moffat.

To this day Mrs. Moffat has obdurately refused to comply with the visitation order and has thus denied the children their right to know and to be with their father. In September 1975 she resigned her job with the office of the district attorney and moved across the country to Virginia, taking the children with her, and there applied for and received public assistance. On September 26, 1975, she filed a petition under RURESA with the district court in Virginia, alleging Mr. Moffat has refused to provide support since July 1973. The petition was returned to California for processing and final hearing took place in September 1977.[3] The court commissioner entered findings of fact that although Mrs. Moffat for at least two preceding years had willfully and deliberately refused the father his visitation rights, and had been held and was then presently in contempt of a prior visitation order, she was not estopped from seeking child support under RURESA. In accordance with the commissioner's recommendation that "A duty of support exists pursuant to the authority of Code of Civil Procedure section 1694 despite the denial of visitation," and over Mr. Moffat's objections, the court entered a support order in the amount of $225 per month per child, plus a 2 percent court trustee fee. Mr. Moffat appeals.

In seeking reversal of the order, Mr. Moffat complains of the court's failure to recognize that estoppel may be a valid defense in a RURESA proceeding. His contention appears to rest on three independent theories: (i) that the flagrant misconduct of a custodial parent in defeating the noncustodial parent's visitation rights precludes her from seeking

[3] RURESA provides for a reciprocal proceeding commenced in the "initiating state" where the "obligee"—usually the mother or child—lives, and tried and enforced in the "responding state" where the "obligor"—usually the father—lives or has property. (See § 1653.) "This notion is based on the desire not to interfere with the breadwinner's decision to live and work where he pleases but to utilize his wages or other property as a source from which payments may be taken, as justice may require, for the support of his family. The two-state suit avoids the expense the dependents would otherwise have to incur to follow the obligor in person or by counsel in order to sue the obligor, for they may now file their complaint in their own court. At the same time it allows the obligor to defend in *his* local court with a minimum loss of time and expense." (Brockelbank & Infausto, Interstate Enforcement of Family Support (2d ed. 1971) p. 41.) Although initially enacted for the purpose of enforcing support obligations of deserting fathers, RURESA applies to any situation in which there is a breach of duty of support, including the case, as here, of a "roving mother." (*Id.* at p. 67.)

child support payments under RURESA; (ii) that a contumacious litigant is not entitled to enforcement of a child support order while standing in contempt of court; and (iii) that a prior order suspending child support payments is res judicata on the issue of duty of support in a RURESA proceeding. We conclude that Mrs. Moffat is not estopped from seeking relief under RURESA by either her denial of Mr. Moffat's visitation rights or her contempt status, but that she is nevertheless precluded in this proceeding from collaterally attacking the contempt order.

## I

■ We first consider whether the denial of visitation rights establishes a sufficient defense to the RURESA action.

Section 1694 provides, as relevant: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." In seeking to avoid the plain meaning of the statute, Mr. Moffat frames the following issue: "Where the father has consistently performed his duty of support, can a mother leave California, quit her job, go on relief in another state, for the express purpose of depriving him of visitation with his children and still use RURESA, and not be subject to [the] defense of *estoppel* because of CCP Section 1694?" Despite our sympathy for a noncustodial parent thrust into that predicament, our reply, in short, is affirmative.

We emphasize that we in no way approve of such conduct by a custodial parent. But as the court observed in *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261]: "Objective of [RURESA] is to aid stationary mothers in exacting child support from peregrinating fathers. The peregrinating mother reverses that objective.... The reciprocal law assures the continued flow of child support. It also facilitates the mother's destruction or impairment of the father's visitation rights and paternal interests." Regardless of whether we might view this as an unjust result from the noncustodial parent's point of view, in such circumstances the child's need for sustenance must be the paramount consideration. (*Id.* at p. 294; *McDowell v. Orsini* (1976) 54 Cal.App.3d 951, 964-968 [127 Cal.Rptr. 285].)

Although the intendment of section 1694 is that RURESA provides no forum for litigating disputes over interference with custody and visi-

tation rights, a noncustodial parent in the position of Mr. Moffat is not bereft of remedy. Such rights are initially determined by the superior court, acting under authority of the Family Law Act. (Civ. Code, § 4351.) Thus the parent whose rights are in jeopardy may seek enforcement of the judgment, order, or decree in the rendering court. (*Id.,* § 4380.) The *Ciganovich* court identified several appropriate sanctions when the custodial parent acts with an intent to frustrate or destroy visitation rights. These include holding the parent in contempt, terminating or reducing spousal support, and requiring a bond to assure compliance with the visitation order. (61 Cal.App.3d at p. 293.) Moreover, the court has authority to award a change of custody or to otherwise modify the custody and child support provisions of the original decree. (*Ibid.*; Civ. Code, §§ 4603, 4700.) The deliberate sabotage of visitation rights not only furnishes ground for modification, it is a significant factor bearing on the fitness of the custodial parent. (*Ciganovich, supra*, 61 Cal.App.3d at p. 294.)

In seeking a writ of habeas corpus and filing a contempt action for violation of the visitation order, Mr. Moffat appropriately sought vindication of his and the children's visitation rights. Unfortunately he was unable to overcome Mrs. Moffat's tenacity. Nevertheless, under existing authority we can only conclude that by her misconduct alone in depriving the father of his visitation rights, she is not estopped from pursuing the enforcement of child support under RURESA.

II

In further support of his estoppel argument, Mr. Moffat identifies Mrs. Moffat's contempt of the July 1973 visitation order as yet another aspect of her aggregate misconduct. ■ We acknowledge the general principle that one who flagrantly and persistently defies a court order is not entitled to maintain an action and to ask the aid and assistance of a court while standing in contempt. (*MacPherson* v. *MacPherson* (1939) 13 Cal.2d 271, 277 [89 P.2d 382]; *Estate of Scott* (1957) 150 Cal. App.2d 590, 594 [310 P.2d 46].) The rule has commonly been applied, but is not limited to, situations in which a party is in contempt of an order or decree rendered in a dissolution proceeding. (*Stone* v. *Bach* (1978) 80 Cal.App.3d 442, 444 [145 Cal.Rptr. 599]; see, e.g., *MacPherson, supra*, 13 Cal.2d 271; *Robinson* v. *Superior Court* (1960) 186 Cal.App.2d 644, 649 [9 Cal.Rptr. 130]; *Travis* v. *Travis* (1948) 89 Cal.App.2d 292, 293 [200 P.2d 843].)

As applied to dissolution proceedings, the rule is codified in section 1218. Specifically excepted from the restriction, however, is the enforcement of child support orders.[4] In relying on numerous cases that apply the common law principle, Mr. Moffat fails to rebut the express provision of section 1218.

The language of the statute is clear. Denial of court access to a disobedient litigant in dissolution proceedings is consistent with decisional law antedating the enactment of the provision in 1968. (Stats. 1968, ch. 938, § 2, p. 1789.) Yet the Legislature chose to enact a statute expressly adapted to that purpose and to provide an explicit exception. In the face of so strong an indicium of legislative policy, we deem the language of section 1218 to be susceptible of no meaning other than its plain intendment that the enforcement of child support orders shall not be barred by the contumacious behavior of a party to a dissolution proceeding. (Cf. *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

### III

Having rejected Mr. Moffat's first two theories of estoppel, we consider his third theory—that the contempt order suspending child support is res judicata and therefore conclusive of the issue of his duty of support in the instant RURESA proceeding.

Duties of support enforceable under RURESA are "those imposed under the laws of any state where the obligor was present for the period during which support is sought." (§ 1670.) Hence any duty owed by Mr. Moffat can only be determined under California law. He concedes, as he must, that the prior order is erroneous in light of *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 465 [137 Cal.Rptr. 348], in which the court held that an order terminating child support following a contempt adjudication for violation of a visitation order was erroneous: "a child may not reasonably be denied support by one parent because of violation of a court order by the other. The rationale of section

---

[4]The statute provides, in pertinent part: "No party, who is in contempt of a court order or judgment in a divorce or separate maintenance action, shall be permitted to enforce such order or judgment, by way of execution or otherwise, either in the same action or by way of a separate action, against the other party. *This restriction shall not affect nor apply to the enforcement of child support orders.*" (Italics added.)

1694...is applicable...."⁵ Nevertheless the order is final, presently in full force and effect. As such, he insists, it is res judicata regardless of whether it was erroneously decided originally. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 797 [126 Cal.Rptr. 225, 543 P.2d 593].)

Mr. Moffat correctly states the rule regarding the res judicata effect of erroneous judgments, but fails to consider whether the contempt order is void rather than merely erroneous. We discerned above, in both sections 1694 and 1218, an undeniable express legislative intent that a parent's misconduct does not estop her from pursuing a support action. The question thus arises whether the court in the contempt proceeding possessed authority to suspend support payments until Mrs. Moffat purged herself of the contempt. That order, of course, is not before us for review. Yet we cannot avoid the question of its propriety. ■ The distinction is crucial, as it is well settled that erroneous final judgments serve as a bar to further litigation on the action, whereas in general void judgments may be collaterally attacked. (See, e.g., Rest., Judgments, § 45, coms. e., f.)

Section 178 empowers a judicial officer to punish for contempt. ■ Although viewed at common law as an inherent power of the court, it has long been held in this state that the power to punish for contempt is circumscribed by statute. (*H. J. Heinz Co.* v. *Superior Court* (1954) 42 Cal.2d 164, 174 [266 P.2d 5], citing *Galland* v. *Galland* (1872) 44 Cal. 475, 478.) Section 1218 authorizes punishment by a fine of not more than $500 and/or imprisonment not exceeding five days, whereas section 1219 permits imprisonment as a coercive measure for contempt consisting of refusal to perform an act within the power of the contemner to perform. "These provisions have been the law since their enactment in 1851 and have been recognized by the courts as establishing the limits within which a court may punish for contempt." (*Ibid.*, citing *Ex parte Cohen* (1856) 6 Cal. 318, 319, 321.)

Applying the foregoing principles in *Heinz*, we reviewed a contempt order and concluded the court had no authority to award compensatory damages for the petitioner's violation of a prohibitory injunction issued

---

⁵Mr. Moffat observes that the contempt order we here consider was entered before *Smith* was decided, but this is of no moment. Earlier cases held it is an abuse of a court's discretion to eliminate child support because of interference by the custodial parent with the visitation rights of the noncustodial parent. (E.g., *Clarke* v. *Clarke* (1970) 4 Cal.App.3d 583, 589 [84 Cal.Rptr. 393]; *Ernst* v. *Ernst* (1963) 214 Cal.App. 2d 174, 178-179 [29 Cal.Rptr. 478].)

in an action for patent infringement. Accordingly, we annulled that portion of the contempt order awarding compensatory damages. (42 Cal.2d at p. 176.) This disposition was consistent with an earlier decision holding "the imposition of a penalty in excess of that prescribed by [section 1218] was an act beyond the power of the court and therefore void." (*Id.* at p. 174, citing *In re Garner* (1918) 179 Cal. 409 [177 P. 162].)

*Heinz* would appear to compel the conclusion that the order suspending support payments as punishment for Mrs. Moffat's contempt was beyond the authority of the court and therefore void, rather than merely erroneous as determined in *Smith, supra,* 68 Cal.App.3d at page 465.[6] Nevertheless, we are not persuaded that the order is amenable to collateral attack.

As we observed in *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 731 [13 Cal.Rptr. 104, 361 P.2d 712]: "An act that may be in excess of jurisdiction so as to justify review by prerogative writ [citations] will nevertheless be res judicata if the court had jurisdiction over the subject and the parties. [Citations.]" The case was a mandamus proceeding to compel the respondent to reinstate an appeal. Mandamus had earlier been sought and denied. Contending the dismissal was a void act in light of an intervening change in the law, the petitioner argued the doctrine of res judicata was inapplicable. Although it presented authorities standing for the proposition that "dismissal of a valid appeal is an act in excess of jurisdiction," we noted the cases relied on "were concerned, not with the doctrine of res judicata, but with the propriety of review by extraordinary writ." (*Ibid.*) The petitioner had received a full hearing on the merits in the first mandamus proceeding by a court possessing jurisdiction over the parties and the subject matter. Applying the rule that "'[A] final judgment or

---

[6]*Heinz* provides some support for the proposition that a court is authorized to impose punishment for contempt other than as prescribed by section 1218, provided it is aimed at securing compliance with the order being disobeyed by the contemner. We approved that portion of the contempt order directing the destruction of equipment built by the petitioner in violation of the injunction against patent infringement. The order was justified as a "method of preventing [petitioner] from further violating the injunction." (42 Cal.2d at p. 176.)

This theory has not been advanced by either party to the present appeal. In any event the *Heinz* rationale has little merit in the context of these proceedings. There the destruction of property was for no purpose other than to secure compliance with the injunction and it was certain to achieve that end. Here, however, whether suspension of support would ensure obedience to the visitation order was merely speculative. Ordering Mrs. Moffat's imprisonment arguably would have been fully as effective as exerting financial pressure on her.

order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i.e., of the subject matter and the parties.' (*Pacific Mut. Life Ins. Co.* v. *McConnell* [1955] 44 Cal.2d 715, 725. . . .)," we held that a second inquiry into the propriety of the dismissal was barred. (55 Cal.2d at p. 733; see also *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 120 [101 Cal.Rptr. 745, 496 P.2d 817]; cf. *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 901, fn. 3 [160 Cal.Rptr. 124, 603 P.2d 41].)

The *Hollywood Circle* rationale is apposite here. Judgments and orders made in contempt proceedings are final and conclusive; as such, they are nonappealable. (§§ 1222, 904.1, subd. (a)(2).) Review may be had by the extraordinary writs of certiorari or, where appropriate, habeas corpus (*Gue* v. *Dennis* (1946) 28 Cal.2d 616, 617-618 [170 P.2d 887]), and the scope of inquiry is limited to the question whether the court had jurisdiction to render the judgment or order (*In re Bongfeldt* (1971) 22 Cal.App.3d 465 [99 Cal.Rptr. 428]; cf. § 1068). Thus the statement in *Heinz*, that an order punishing for contempt other than as prescribed in section 1218 is void, was made in the context of a review proceeding; and the order was properly annulled as an act in excess of jurisdiction.[7]

■ Here, as in *Hollywood Circle*, we are concerned with the doctrine of res judicata and whether the prior order is immune from collateral attack. Since we do not review the contempt order for jurisdictional defects, we are not bound by the decision in *Heinz*. Rather the principles enunciated in *Pacific Mutual, supra*, 44 Cal.2d 715, and followed in *Hollywood Circle*, pertain: the contempt order is res judicata even though not consistent with section 1218 provided the rendering court had fundamental jurisdiction. Stated otherwise, if that court had jurisdiction over the subject matter and parties, the order is not subject to collateral attack in this proceeding, regardless of whether it was in excess of jurisdiction.

---

[7]We note that *Smith, supra*, 68 Cal.App.3d 457, was also a proceeding to review a contempt order, the outcome of which was annulment of the order. Thus it is puzzling that the court labeled the order terminating child support "erroneous," rather than "void" or in excess of jurisdiction. A plausible explanation is that the court simply used the word in its lay sense, and without precision. A more frequently observed abuse of terminology is the indiscriminate application of the term "void" to different types of jurisdictional defects. (*Barquis* v. *Merchants Collection Assn., supra*, 7 Cal.3d at pp. 120, 122 & fn. 27.)

*Rosin* v. *Superior Court* (1960) 181 Cal.App.2d 486 [5 Cal.Rptr. 421], is determinative of the issue of subject matter jurisdiction. The petitioner sought review of an order adjudging her in contempt for depriving her ex-husband of child visitation in violation of their divorce decree. The court concluded the order was neither without nor in excess of jurisdiction because the respondent court, after rendering the divorce, decree, had continuing jurisdiction over the custody and support of the children. The petitioner's denial of visitation rights constituted an interference with the proceedings of the court, and the respondent court thus had jurisdiction to adjudge her in contempt. (*Id.* at pp. 499-500.)

Here, too, the contempt order was made by the court having continuing jurisdiction in the dissolution proceedings and was for violation of an order rendered in those proceedings. Jurisdiction over the parties is not in dispute. We therefore conclude the court had jurisdiction in the fundamental sense, i.e., over the subject matter and over the parties.

There is a further consideration influencing our decision to declare the contempt order res judicata. In *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942 [126 Cal.Rptr. 805, 544 P.2d 941], we affirmed the dismissal of the plaintiffs' action against their father for past child support. In deciding not to permit collateral attack of an earlier judgment that established the father's support obligation and was not subject to retroactive modification, we rested our decision in part on an equitable principle of reliance: "Where some of the parties have relied on, or changed their position in accordance with the former judgment, a court may deny collateral attack." (*Id.* at p. 951, citing *Frank* v. *Frank* (1969) 275 Cal.App.2d 717, 722 [80 Cal.Rptr. 141]; *Farley* v. *Farley* (1964) 227 Cal.App.2d 1, 11 [38 Cal.Rptr. 357].) The petitioners did not allege any intentional misconduct by their father. We therefore deemed it a manifest injustice to impose liability on him for past support obligations.[8]

In the case before us Mr. Moffat was entitled to rely on the 1973 order excusing him from support payments. Mrs. Moffat had full

---

[8]Although Mrs. Moffat claims she is not seeking arrearages in the present action, she does request a support order effective as of the date she filed her petition, i.e., September 1975. The trial court order, dated October 11, 1977, requires prospective payments to commence October 1, 1977. Thus, at this late date, an affirmance would have imposed a burden of more than two and a half years' back payments. Presumably such funds would have substantially gone to reimburse the State of Virginia rather than to the mother or children.

opportunity to contest the propriety of the order at the time of the contempt hearing or, in the alternative, to seek review by an extraordinary writ. "[T]here is almost a presumption of negligence on the part of the aggrieved party who fails to seek these normal remedies and later raises the objection by collateral attack." (*Frank* v. *Frank, supra,* 275 Cal. App.2d at p. 722.) Indeed, her failure over the years to seek normal available remedies may be viewed as encouraging Mr. Moffat to rely on the validity of the order. (*Id.* at p. 723.)[9]

## IV

Mrs. Moffat hastily dismisses the father's assertions of estoppel and res judicata as defenses to the RURESA action and maintains the sole issue to be resolved is "the question of entitlement of dependents to support by one legally liable to support them." (*Clark* v. *Clark* (1966) 246 Cal.App.2d 619, 622 [54 Cal.Rptr. 875].) She next asserts section 1694 requires the court to ignore her denial of the father's visitation rights in determining this action. We addressed these contentions above (Part I, *ante*), and they are inapposite to our ultimate conclusion.

Parenthetically we note the emphasis of the Attorney General, representing Mrs. Moffat in this proceeding, on "the welfare of the children," but he measures welfare in terms of dollars and cents. We believe the children's well-being transcends material considerations. This mother is cruelly inflicting incalculable damage to the children's welfare by arbitrarily denying to them the values inherent in a congenial father-child relationship. Visitation rights are a two-way street: although technically awarded by a court to a parent, the rights belong equally to the children. Thus the Legislature and our courts alike have declared an abiding parental relationship to be in the best interests of the child. (Civ. Code, § 4600; *In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at p. 294.)

While this court has never before ordered a trial court to appoint independent counsel for children in a domestic controversy, this would

---

[9]We emphasize that the foregoing discussion does not preclude Mrs. Moffat from personally returning to the court that issued the contempt order and seeking to obtain a modification of that order. As we have noted, the court has continuing jurisdiction over the dissolution proceedings and retains the authority to modify orders relating to support payments. So long as the contempt order remains outstanding and unmodified, however, under California law Mr. Moffat is under no existing support duty that can serve as a basis for a RURESA action.

appear to be an appropriate case for such an appointment. Seldom have we seen such circumstances in which the integral well-being of the children appears to be, at least to some degree, in conflict with the intransigence of both parents. In any further proceedings in domestic relations court, we recommend that course, i.e., appointment of counsel for the children, to the trial court.[10]

In sum, then, section 1694 bars the assertion of interference with visitation rights as a defense in a RURESA proceeding in which the duty of support is being determined. But here, there has previously been a full and final adjudication of Mrs. Moffat's violation of the visitation order that conditioned the father's liability on her compliance with the order. Accordingly, the trial court erred in failing to give conclusive effect to the prevailing contempt order and holding that a duty of support exists despite the denial of visitation.

■ RURESA was enacted for the purpose of enforcing *existing* duties of support against persons presently *legally liable* for such support; it cannot create new support obligations. (§ 1652; 9A U. Laws Ann. (1979) Uniform Reciprocal Enforcement of Support Act, 1968 Revised Act, Commissioners' Prefatory Note, p. 644.) We also note that as a uniform act, it is to be "interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." (§ 1651.)

Our conclusion here is consistent with that reached by an Arizona court in a case directly on point. (*State* ex rel. *Arvayo* v. *Guerrero* (1973) 21 Ariz.App. 173 [517 P.2d 526].) The court held an Arizona statute identical to section 1694 inapposite because a prior divorce proceeding order terminated the father's duty of support until the mother honored the visitation terms of the decree. That order had become final

---

[10]Numerous authorities have expounded the need for child advocacy in proceedings in which the interests and rights of the child are at stake. (See, e.g., Foster & Freed, *A Bill of Rights for Children* (1972) 6 Family L.Q. 343, 354-357; Genden, *Separate Legal Representation for Children: Protecting the Rights and Interests of Minors in Judicial Proceedings* (1976) 11 Harv.Civ.Rights—Civ.Lib.L.Rev. 565; Goldstein, et al., Beyond the Best Interests of the Child (1973) pp. 65-67.) In the field of domestic relations law this need is perhaps nowhere so apparent as in proceedings to determine child custody. Thus the Family Law Act confers discretionary authority on the court to appoint independent counsel in any proceeding in which the custody of a minor child is in issue, if it finds that to do so would be in the best interests of the child. (Civ. Code, § 4606.) If Mrs. Moffat chooses to seek a modification of the contempt order in the trial court, the issues of visitation rights, custody, and support would all come into play and section 4606 would thus be applicable.

and the mother was not permitted to collaterally attack it in the RURESA proceeding. (Also see *Ray* v. *Pentlicki* (Fla.App. 1979) 375 So.2d 875; *Cochran* v. *Cochran* (Fla.App. 1972) 263 So.2d 292; cf. *Richards* v. *Gibson* (1979) 90 Cal.App.3d 877 [153 Cal.Rptr. 561]; *Chance* v. *LaPausky* (1979) 43 Md.App. 84 [402 A.2d 1329]; *Hethcox* v. *Hethcox* (1978) 146 Ga.App. 430 [246 S.E.2d 444]; *State of New Jersey* v. *Morales* (1973) 35 Ohio App.2d 56 [64 Ohio Ops.2d 175, 299 N.E.2d 920].)

The order is reversed.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.