[No. A040450. First Dist., Div. Two, Mar. 31, 1989.]

In re the Marriage of JOYCE MARIE and ROY LEE SMITH.
JOYCE MARIE SMITH, Respondent, v.
ROY LEE SMITH, Appellant.

COUNSEL

Morrison, James & McGill and H. Nathan James for Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Josanna Berkow, Deputy Attorneys General, for Respondent.

OPINION

PETERSON, J.—This appeal presents the following issue: Where a former wife receiving public assistance for support of her children assigns to the paying county all her rights to accrued and court ordered child support payments from her former husband, may his defense, that she is estopped to collect child support from him for the period *prior* to that assignment, also be asserted against the county? We will answer this question affirmatively and reverse and remand.

STATEMENT OF FACTS

Roy and Joyce Smith were divorced on March 19, 1981. On May 18, 1980, the San Mateo Superior Court awarded custody of their three children to Joyce, and ordered Roy to pay $300 per month spousal support and $300 per month child support. Problems arose concerning Roy's failure to pay support and Joyce's alleged interference with Roy's visitation rights; and on June 23, 1981, the court entered an order that accepted the parties' waiver of spousal support, increased the child support payments to $375 per month, set a visitation schedule for Roy, and ordered Joyce not to remove the children from the state without Roy's or the court's permission.

On March 2, 1982, after a hearing on February 17, 1982, concerning further problems with support payments and visitation, the court reduced Roy's child support payments to $225 per month and ordered the payment of arrearages to Joyce. The court also ordered Joyce to ". . . keep Roy

Smith informed of the address and phone number of the children and if she fails to do so child support shall cease until she does so."

Meanwhile, according to Roy's uncontested declarations presented below, Joyce had taken the children out of the state in February 1982 without Roy's or the court's permission. Roy conceded that he knew the children were somewhere in Kansas, but declared that Joyce did not provide him with a telephone number or address for the children as the court's 1982 order required, that he had no contact with them until November 1985 when the children telephoned him, and that he ". . . do[es] not know where they had lived during this period of almost four years."

Joyce and the children returned to California and began receiving public assistance from the City and County of San Francisco (hereinafter county) in December 1985. As of July 29, 1987, more than $14,000 in public assistance funds had been paid to them. As a condition of receiving public assistance, Joyce assigned all her rights to child support, including past arrearages, to the county, which in May 1987 filed against Roy for child support arrearages in the sum of $13,350 in San Francisco Superior Court.

In June, July, and August 1987, Roy filed motions, briefs, and declarations conceding that he owed arrearages of $5,775 for periods when he knew of the children's whereabouts, that is, for the months prior to February 1982 and after November 1985; but he asserted that no payments had accrued during the intervening period while Joyce was allegedly violating the 1982 order by not telling him where the children were, and thereby frustrating or precluding his visitation rights with the children. The county filed briefs indicating its view that the provision of the 1982 order conditioning child support on Joyce's facilitating Roy's visitation was void, and that Roy could not avoid payment of the additional $7,575 in arrearages even if the facts as stated in his declarations were true. In so arguing, the county relied on a 1987 decision by Division Four of this District which had recently been ordered depublished by the Supreme Court. However, the county also sought leave of court to add to the record evidence contradicting Roy's showing, if the court did not feel itself bound to rule as a matter of law that the 1982 order was void.

On September 11, 1987, the court filed its order after hearing which adopted the county's position that the provisions of the 1982 order were ". . . insufficient in law to stay any child support payment." Roy filed his notice of appeal on October 30, 1987.

## DISCUSSION

Roy argues on appeal that the San Francisco Superior Court erred by not finding that the 1982 San Mateo County order, which in essence

conditioned support payments on Roy's having an opportunity for visitation, was final and binding under principles of res judicata. He also argues that that provision of the unappealed 1982 order is not subject to collateral attack in this proceeding. ■ Next, he argues that Joyce and the county are equitably estopped from recovering arrearages for the period in which Joyce was allegedly in violation of that order, and Roy was allegedly relying on the terms of that order. ■ The county argues that res judicata principles do not apply, and that an order conditioning support on visitation is void on its face and subject to collateral attack. ■ Further, the county argues that Joyce would not be estopped to collect arrearages for the period in question, and that in any event the county is not estopped to collect arrearages from Roy regardless of whether Joyce would be so estopped.

■ We agree with the county that the 1982 order conditioning child support upon visitation is difficult to reconcile with the statutes and cases which bind us, and we believe that order is subject to collateral attack and is not res judicata in this controversy. ■ However, we agree with Roy that, as to the question of those child support arrearages at issue here which arose *prior* to Joyce's receipt of public assistance and during a period when Joyce was allegedly frustrating Roy's visitation rights in violation of the 1982 order which Roy allegedly relied on, the defense of Joyce's consequent estoppel to recover such arrearages could be asserted by Roy as to both Joyce and the county as her assignee.

In order to explain these conclusions, we must briefly review a tangled web of precedent. ■■ In 1980 our Supreme Court decided *Moffat* v. *Moffat* (1980) 27 Cal.3d. 645 [165 Cal.Rptr. 877, 612 P.2d 967], which declared that in cases dealing with child support payments, ". . . the child's need for sustenance must be the paramount consideration," and that ". . . the enforcement of child support orders shall not be barred by the contumacious behavior of a party to a dissolution proceeding" who refuses to allow visitation by the other parent. (*Moffat* v. *Moffat, supra,* 27 Cal.3d at pp. 651, 653.) The high court based this conclusion on Code of Civil Procedure section 1694, which provides that the duty of support is " '. . . unaffected by any interference . . . with rights of custody or visitation . . . .' " (*Moffat* v. *Moffat, supra,* 27 Cal.3d at pp. 651-652.) ■ However, *Moffat* also held that where the custodial parent, Mrs. Moffat, refused to comply with a final court order which (a) allowed Mr. Moffat to visit his children and (b) suspended support payments until visitation was allowed, "Mr. Moffat was entitled to rely on the 1973 order excusing him from support payments." (*Id.* at p. 657.) The Supreme Court reversed the lower court order requiring that Mr. Moffat make the child support payments in question. (*Id.* at p. 660.)

 While *Moffat* was pending in the Supreme Court but before it was decided, the Legislature added a new section 4382 to the Civil Code, which like Code of Civil Procedure section 1694 provides that the ". . . enforcement of a duty of support . . . shall not be affected by a failure or refusal . . . to implement any rights as to . . . visitation . . . ." The Supreme Court in *Moffat* did not cite the new section 4382 to the Civil Code. Although at least one court has mistakenly concluded that section 4382 was enacted *after Moffat* in order to further clarify the law, section 4382 was in fact filed with the Secretary of State in June 1980, two weeks before the decision in *Moffat*. (Stats. 1980, ch. 237, § 1, p. 480.)

Since 1980 there has been a split of authority on the question of whether a custodial parent's actions in frustrating the visitation rights of the other parent can operate to bar liability for child support. Some courts have held or indicated in dicta that frustration of visitation rights is irrelevant to the question of child support liability. (See, e.g., *In re Marriage of Anderson* (1981) 125 Cal.App.3d 553, 559-560 [178 Cal.Rptr. 117] [noting "some divergence" of authority but concluding in strong dicta and an alternative holding that ". . . a parent's sabotage of the noncustodial parent's visitation rights does not justify withholding child support payments . . . ."]; *Carr* v. *Marshman* (1983) 147 Cal.App.3d 1117, 1120 [195 Cal.Rptr. 603] [interference with *custody* not a defense to action for child support; dicta indicate same result regarding interference with visitation rights, without any mention of contrary authority].)

Another line of cases recognizes that a strong showing of "sabotage" of visitation rights may operate as an estoppel, barring liability for child support arrearages. (See, e.g. *Solberg* v. *Wenker* (1985) 163 Cal.App.3d 475, 480-481 [209 Cal.Rptr. 545] ["[T]he trial court properly held that Mr. Wenker was not required to put money into Ms. Solberg's pockets for the period during which she had concealed his daughters from him."]; *In re Marriage of Daves* (1982) 136 Cal.App.3d 7, 10 [185 Cal.Rptr. 770] ["[T]he court could properly find Charlene was estopped to recover support payments for the period she concealed from Phillip her whereabouts and the children's location."]; *State of Washington* ex rel. *Burton* v. *Leyser* (1987) 196 Cal.App.3d 451, 460 [241 Cal.Rptr. 812] [waiver or estoppel made out where ". . . Susan does not challenge the trial court's finding that she did not contact James after leaving the state, or make her whereabouts known to him."].)

Finally, a third group of cases discusses both lines of authority but avoids their attempted reconciliation. (See, e.g., *In re Marriage of Kelley* (1986) 186 Cal.App.3d 613, 618-619 [231 Cal.Rptr. 6] [noting both lines of authority but avoiding conflict because there was no substantial evidence of con-

cealment of the children]; *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 452 [235 Cal.Rptr. 458] [court order relieving father of child support payments is void, but court indicates in dicta that wife had not sought any arrearages, only future support; and if arrearages were sought, ". . . the issues of waiver and estoppel would undoubtedly have to be addressed."].)

■ Under these statutes and precedents, we agree with the county that the 1982 order which conditioned support payments upon an opportunity for visitation was not res judicata, and was void on its face and subject to collateral attack. (Code Civ. Proc., § 1694; Civ. Code, § 4382; *In re Marriage of Ayo, supra,* 190 Cal.App.3d at p. 452 and fn. 6; *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1026-1027 [230 Cal.Rptr. 203].)

■ That does not end our inquiry, however. Before the court below was Roy's uncontradicted evidence tending to show that during the period of February 1982 to November 1985, *prior* to Joyce's assignment to the county of her rights to child support, the whereabouts of his children had been concealed from him. The court below apparently relied on an opinion which had been ordered depublished, and disregarded this evidence supporting Roy's estoppel argument because it felt itself bound to find such matters irrelevant as a matter of law. The county for the same reason did not produce evidence in opposition.

If a parent makes a strong showing of sabotage of visitation rights, as by concealment of the whereabouts of the children, an estoppel or waiver can thereby arise which bars liability for past support payments which would otherwise have been payable during the period of concealment. (*Solberg* v. *Wenker, supra,* 163 Cal.App.3d at pp. 479-480; *State of Washington* ex rel. *Burton* v. *Leyser, supra,* 196 Cal.App.3d at pp. 458-460; *In re Marriage of Daves, supra,* 136 Cal.App.3d at p. 10; see also *Moffat* v. *Moffat, supra,* 27 Cal.3d at pp. 657-659.)

The county suggests that recognition of such an estoppel is contrary to the best interests of the children, whose need for sustenance we agree "must be the paramount consideration." (*Moffat* v. *Moffat, supra,* 27 Cal.3d at p. 651.) However, on the facts of this case, we have difficulty perceiving how the children's needs are served by the county's collection of money from Roy for periods before the assignment when they were allegedly concealed from him. "We believe the children's well-being transcends material considerations." (*Id.* at p. 658.) "Visitation rights are a two-way street: although technically awarded by a court to a parent, the rights belong equally to the children. Thus the Legislature and our courts alike have declared an abiding parental relationship to be in the best interests of the child." (*Ibid.*; see also *State of Washington* ex rel. *Burton* v. *Leyser, supra,* 196 Cal.App.3d at

p. 457 ["We agree the principal concern in litigating the right to current and future child support is the welfare of the child. However, when past unpaid support is the issue, the welfare of the child may not be involved. For example, in this case reimbursement . . . will have no tangible effect on [the child] . . . ."].)

The county also argues more logically that recognition of such an estoppel against a county's assigned claim has public policy and fiscal implications, which may warrant a decision not to recognize an estoppel theory here. The county relies on decisions which indicate that an estoppel will not arise against a county's assigned claim for child support, based upon the behavior of the custodial spouse, or anyone else, *after the assignment.* (See *In re Marriage of Kelley, supra,* 186 Cal.App.3d at p. 620 [declining to invoke estoppel because ". . . the assignment was prior to the alleged concealment . . ."]; see also *State of Washington* ex rel. *Burton* v. *Leyser, supra,* 196 Cal.App.3d at p. 457 [following *Kelley* ]; *In re Marriage of Lugo* (1985) 170 Cal.App.3d 427, 430, 435 [217 Cal.Rptr. 74] [estoppel not available where wife had been receiving public assistance prior to divorce].) The county also cites a dictum in *Kelley* which suggests that, "[e]ven if Wife had engaged in concealment prior to the assignments, it appears well settled that estoppel will not be applied to a public entity if to do so would effectively nullify a strong rule of policy adopted for the public benefit." (*In re Marriage of Kelley, supra,* 186 Cal.App.3d at p. 620.) The *Kelley* court cites in support of this dictum three cases, all of which discussed estoppel theories in relation to public lands or easements. We decline to follow this *Kelley* dictum.

Whatever the case may be regarding the consideration of defenses of alleged estoppel of public entities with respect to public interest in lands or easements in real property, our holding here need not depend on notions of public policy derived from such a rationale. ■ Rather, we have previously noted that ". . . in determining child support rights, including those relating to the assignment of such rights, we are governed not only by the rules of common law, but also by specific statutes enacted by the federal and state legislative bodies." (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 295 [139 Cal.Rptr. 349].) ■ The county has been assigned rights originally held by a private person, and by virtue of that assignment succeeded to those rights subject to any defenses then available against the assignor. (Civ. Code, § 248 ["The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state."]; *County of Santa Barbara* v. *David R.* (1988) 200 Cal.App.3d 98, 102 [245 Cal.Rptr. 836] ["Under . . . section 248, the county steps into the shoes of the obligee . . . ."].) ■ "As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies

subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment." (*Salaman* v. *Bolt* (1977) 74 Cal.App.3d 907, 919 [141 Cal.Rptr. 841].) " 'It would be most unfair that a third person, merely by reason of his interposition, *whether he was a sovereign or not,* should be able to change the rights *inter sese* between the obligor of the chose in action and his obligee, who is the objective of the levy or attachment.' " (*Highsmith* v. *Lair* (1955) 44 Cal.2d 298, 302 [281 P.2d 865], quoting *United States* v. *Bank of United States* (S.D.N.Y. 1934) 5 F.Supp. 942, 945, italics added; Code Civ. Proc., § 368; Rest.2d Contracts, § 336; *In re Ramirez* (9th Cir. 1986) 795 F.2d 1494, 1497-1499, cert. den. (1987) 481 U.S. 1003 [95 L.Ed.2d 198, 107 S.Ct. 1624].) ▆▆ In short, assignment of a sow's ear to the county cannot transform it into a silk purse. If the evidence shows that Joyce is estopped from receiving or has waived her rights to child support accrued prior to her assignment to the county, that waiver or estoppel would also bar the county.

In this case the court below, for reasons we have previously made clear, did not consider evidence on the question of estoppel or waiver. We, therefore, remand the case so that Roy and the county can present evidence on such issues; and so that the court below may enter a new order on such evidence consistent with the views expressed in this opinion.

Reversed and remanded.

Kline, P. J., and Smith, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 20, 1989. Lucas, C. J., and Broussard, J., were of the opinion that the petition should be granted.