218 Cal.App.3d 1249 (1990)
267 Cal. Rptr. 642
In re the Marriage of DOLORES and GARY TIBBETT.
GARY TIBBETT, Respondent,
v.
DOLORES TIBBETT, Appellant.
Docket No. A046030.
Court of Appeals of California, First District, Division Four.
February 28, 1990.
*1250 COUNSEL
Nancy L. Parent for Respondent.
John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Appellant.
OPINION
CHANNELL, J.
Respondent Gary Tibbett requested an order determining arrearages for unpaid child support payments in January 1989. On February 28, 1989, the court ruled that Gary must pay arrearages from January 1, 1984[1] through February 28, 1989, totaling $8,825 at a monthly rate of $245. The court also directed that he continue to pay $75 a month child support for his son, beginning on March 1, 1989.[2] On April 20, 1989, the court issued an order memorializing its ruling. Gary's former spouse, appellant Dolores Tibbett, appeals from the order determining arrearages.[3] We reverse the order.

*1251 I. FACTS
Gary and Dolores Tibbett were married on July 26, 1969. Before this marriage, Dolores had borne a daughter, Julie, on September 4, 1966. After marrying Dolores, Gary adopted Julie. Dolores and Gary had a son, Gary II (Skip), on July 18, 1970. The marriage dissolved in 1973. Dolores was awarded custody of Julie and Skip.
Dolores remarried and moved with the children to Oklahoma in 1974. Shortly after the move, Gary stopped making the previously ordered child support payments. He tried to find the children several times. According to Gary and his second wife Susan, the district attorney told them that child support payments did not have to be made if Dolores and the children could not be found. Gary did not hear from the children again until Christmas 1982. After December 1982, Gary bought gifts for the children. In July 1987, 3 months before Julie turned 21, Julie became emancipated, ending Gary's obligation to provide child support for her.
In 1988, Dolores demanded that Gary pay child support arrearages from January 1975[4] to 1989 and pay current child support for Skip. In January 1989, Gary requested an order determining child support arrearages. In April 1989, the court ordered Gary to pay $8,825 in arrearages and $75 per month in child support.
The trial court refused to fix arrearages for the period from June 1974 through December 1983 and declined to make a specific finding on the issue of concealment.[5] Dolores requested a statement of decision. (Code Civ. Proc., § 632.) The court denied the request as untimely.

II. DISCUSSION
(1) On appeal, Dolores contends that Gary is liable for arrearages accruing from June 1974 through December 1983. She asserts that her right to child support arrearages was unaffected by any disruption in Gary's visitation rights.
Older cases recognized that a custodial parent could be estopped from collecting child support arrearages from the noncustodial parent upon a sufficient showing the custodial parent interfered with the noncustodial parent's visitation rights. (See Kaminski v. Kaminski (1970) 8 Cal. App.3d *1252 563, 564-568 [87 Cal. Rptr. 453].) In 1970, the Legislature enacted section 1695 (now renumbered § 1694) of the Code of Civil procedure, providing that the enforcement of a child support obligation "is unaffected by any interference" with court granted visitation rights. This provision became effective in 1971. (See Stats. 1970, ch. 1126, § 31, pp. 2002-2003; see also Gov. Code, § 9600, subd. (a).) Although cases decided after the effective date of the statute occasionally found the custodial parent to be estopped, relying on Kaminski and its progeny (see In re Marriage of Daves (1982) 136 Cal. App.3d 7, 9-11 [185 Cal. Rptr. 770]; Szamocki v. Szamocki (1975) 47 Cal. App.3d 812, 818-820 [121 Cal. Rptr. 231]), in most of the post-1970 cases, appellate courts applied Code of Civil Procedure section 1694 and did not estop the custodial parent from collecting past due child support, despite that parent's frustration of the noncustodial parent's visitation rights. (See In re Marriage of Roesch (1978) 83 Cal. App.3d 96, 103-104 [147 Cal. Rptr. 586], cert. den. 440 U.S. 915 [59 L.Ed.2d 465, 99 S.Ct. 1232]; Smith v. Superior Court (1977) 68 Cal. App.3d 457, 465 [137 Cal. Rptr. 348]; In re Marriage of Ciganovich (1976) 61 Cal. App.3d 289, 293-295 [132 Cal. Rptr. 261]; McDowell v. Orsini (1976) 54 Cal. App.3d 951, 963-968 [127 Cal. Rptr. 285].)
In 1980, the California Supreme Court issued its only decision discussing this issue. In Moffat v. Moffat (1980) 27 Cal.3d 645 [165 Cal. Rptr. 877, 612 P.2d 967], the court ruled that in such cases, the "child's need for sustenance must be the paramount consideration." (Id., at p. 651.) The court based its ruling on Code of Civil Procedure section 1694, holding that the intent of this provision was to clarify that the Revised Uniform Reciprocal Enforcement of Support Act provides "no forum for litigating disputes over interference with custody and visitation rights...." (Id., at pp. 651-652.)
Moffat cited In re Marriage of Ciganovich, supra, 61 Cal. App.3d 289, with approval. (See Moffat v. Moffat, supra, 27 Cal.3d at pp. 651-652.) As Ciganovich had done, Moffat noted that the noncustodial parent whose visitation rights are being frustrated typically has remedies other than to withhold child support. (Moffat, at pp. 651-652.) Such a parent may seek enforcement of the judgment order or decree in the rendering court (Civ. Code, § 4380), at which time the court may impose sanctions. These include holding the custodial parent in contempt, terminating or reducing spousal support, and requiring a bond to assure compliance with the visitation order. The court may also award a change of custody or otherwise modify the custody and support provisions of the original decree. (Id., §§ 4603, 4700; Moffat v. Moffat, supra, at p. 652.)
After Moffat, Civil Code section 4382 became effective on January 1, 1981. (Stats. 1980, ch. 237, § 1, p. 480; see Gov. Code, § 9600, subd. (a).) *1253 The Legislature enacted this provision to further clarify that visitation and child support are separate rights with separate remedies. This statute provides that the "enforcement of a duty of support owed by a noncustodial parent for the support of a minor child shall not be affected by a failure or refusal by the custodial parent to implement any rights as to ... visitation granted by a court to the noncustodial parent." (Italics added.) After Moffat and the enactment of Civil Code section 4382, most appellate courts have refused to estop a custodial parent from collecting child support arrearages even when that parent has interfered with the noncustodial parent's visitation rights. (See In re Marriage of Kelley (1986) 186 Cal. App.3d 613, 615-619 [231 Cal. Rptr. 6]; Camacho v. Camacho (1985) 173 Cal. App.3d 214, 218-220 [218 Cal. Rptr. 810]; In re Marriage of Ryall (1984) 154 Cal. App.3d 743, 747-754 [201 Cal. Rptr. 504]; Carr v. Marshman (1983) 147 Cal. App.3d 1117, 1119-1124 [195 Cal. Rptr. 603]; In re Marriage of Anderson (1981) 125 Cal. App.3d 553, 559-562 [178 Cal. Rptr. 117]; but see Creed v. Schultz (1983) 148 Cal. App.3d 733, 741-742 [196 Cal. Rptr. 252] [applying Ohio law]; In re Marriage of Daves, supra, 136 Cal. App.3d at pp. 9-11 [no discussion of Moffat, statutes].)
In Solberg v. Wenker (1985) 163 Cal. App.3d 475 [209 Cal. Rptr. 545], the appellate court attempted to reconcile the two lines of cases  those that postdated the statutes and those that predated them. (Id., at pp. 479-481.) The Solberg court distinguished between mere interference, which the statutes provide does not constitute the basis of estoppel, and concealment, which was found to be outside the meaning of the statutes and which thus allowed estoppel as an equitable defense to child support arrearages. In support of this conclusion, Solberg relies on suspect authority  cases that predate the statute as well as cases that do not discuss these relevant authorities. (Id., at p. 480; see In re Marriage of Daves, supra, 136 Cal. App.3d at p. 10; Szamocki v. Szamocki, supra, 47 Cal. App.3d at pp. 818-820; see also Alferitz v. Borgwardt (1899) 126 Cal. 201, 207-209 [58 P. 460] [case decided in ignorance of statute is not precedent].) Some other courts have followed Solberg. (See, e.g., In re Marriage of Smith (1989) 209 Cal. App.3d 196, 202 [257 Cal. Rptr. 47].) After reviewing Solberg and its progeny in the context of these statutes and the Moffat decision, we find Solberg's interference-concealment distinction to be contrary to established law and we decline to follow it.
The authorities that bind us hold that enforcement of a child support obligation must not be affected by "any interference" with visitation rights. (Code Civ. Proc., § 1694.) The enforcement of this duty "shall not be affected by a [custodial parent's] failure or refusal ... to implement [visitation] rights...." (Civ. Code, § 4382, italics added.) In such cases, the child's need for sustenance is "paramount." (See Moffat v. Moffat, supra, 27 *1254 Cal.3d at p. 651.) The Legislature's clear statement of the law is unconditional, and cannot be interpreted to provide the sort of exception Solberg created. (See Lass v. Eliassen (1928) 94 Cal. App. 175, 179 [270 P. 745] [equity will not intrude into matters covered by positive statute or aid in circumventing legislative pronouncements]; Katsivalis v. Serrano Reconveyance Co. (1977) 70 Cal. App.3d 200, 213 [138 Cal. Rptr. 620]; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 3, pp. 5230-5231.) The Supreme Court has held that the Legislature intended to separate support and visitation rights  that a custodial parent's misconduct cannot estop that parent from asserting a child's support rights. (Moffat v. Moffat, supra, 27 Cal.3d at p. 651.) Regardless of whether the custodial parent actually conceals the children from the noncustodial parent or merely interferes with their visitation, these authorities apply with equal force. While we do not condone any custodial parent's deprivation of the visitation rights of a noncustodial parent, we find that concealment does not constitute a defense to a child support action. We therefore conclude that the trial court erred in excluding arrearages from the period of June 1974 through December 1983.[6]
The order is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion. In the interests of justice, each party shall pay its own costs.
Anderson, P.J., and Perley, J., concurred.
NOTES
[1] A discrepancy exists between the court's oral statements and the order after hearing concerning the date on which the arrearages period began. At the hearing, the trial court used December 1982 as the starting date; the order refers to January 1, 1984, as this date. Dolores notes this discrepancy in her opening brief. For purposes of this opinion, the starting date recognized on the order after hearing will be used.
[2] The total of monthly payments for arrearages and child support payments would be $320.
[3] The order determining arrearages and compelling payment of support is an appealable order. (Code Civ. Proc., § 904.1 subd. (b); see County of Ventura v. Tillett (1982) 133 Cal. App.3d 105, 111 [183 Cal. Rptr. 741].)
[4] Although Dolores asked for arrearages beginning on January 1975, she testified that Gary stopped making payments in June 1974.
[5] See footnote 1, ante, page 1250.
[6] In light of this conclusion, we need not address Dolores's other contentions on appeal.