[No. A094067. First Dist., Div. Four. Dec. 27, 2001.]

In re the Marriage of KIM and GEORGE VROENEN.
KIM OSTLER, Appellant, v.
GEORGE VROENEN, Respondent.

**COUNSEL**

G. Scott Gaustad for Appellant.

George Vroenen, in pro. per., for Respondent.

**OPINION**

**KAY, J.**—Appellant Kim Ostler seeks to collect past due child support from her former husband, respondent George Vroenen. The trial court found

she was estopped from collecting the portion of the arrearage that accumulated when she actively concealed the whereabouts of the parties' children.

We conclude the defense of estoppel based on concealment was not available in this case because the concealment ended when the children were still minors. We reverse the order of the trial court.

## BACKGROUND

The marriage of Kim and George Vroenen was dissolved in 1990. Kim Vroenen now uses the name Kim Ostler; we will refer to her as "Ostler" and Mr. Vroenen as "Vroenen" throughout the remainder of this opinion.

Ostler and Vroenen had two sons, Mathew (born in April 1978) and Gary (born in August 1980). In connection with the dissolution of the marriage, Vroenen agreed to pay child support in the amount of $600 per month ($300 per child). In early 1990, he stopped making payments. He resumed paying child support in June 1994.

In September 1999, Ostler, with the assistance of the Mendocino County District Attorney's Office, filed a motion to collect child support in arrears. She alleged Vroenen owed over $59,000 in past due child support and interest. Vroenen conceded he did not pay child support for approximately four years, starting in April 1990. He stated he could not find Ostler and the boys during that time period. He noted he had paid child support again as soon as he had heard from his sons.

At an evidentiary hearing on the matter, Ostler and Vroenen gave conflicting accounts of their actions between April 1990 and May 1994. The trial court also heard testimony from Vroenen's mother and Ostler's sister. The court found "much of [Ostler's] testimony not to be credible" and disregarded her excuses for not contacting Vroenen or his mother. In its statement of decision the court set out a chronology of the relevant events, which included the following:

— In April 1990, Ostler and the children moved from the family home in San Bernardino County to Orange County without prior notice to Vroenen or his mother.

— In June 1990, Ostler contacted "Orange County Family Support re: enforcement of the child support order."

— In August 1990, Ostler's attorney offered information about the location of the children in exchange for payment of child support.

— In November 1990, Ostler's attorney filed a substitution of attorney notice, which gave an Orange County address for Ostler.

— In February 1991, Vroenen's attorney withdrew as attorney of record because Vroenen had not kept the attorney informed of his whereabouts.

— In July 1991, Ostler had an appointment with "Orange County D.A. Family Support."

— In late 1991, Ostler moved back to San Bernardino County.

— In January or February 1992, Vroenen moved to Canada.

— In February 1992, the San Bernardino County Family Support Division filed a support enforcement order.

— In July 1992, Ostler moved to Florida.

— In 1993, Vroenen moved back to Southern California.

— In October 1993, Ostler "signed up with Office of Child Support Enforcement in Florida."

— In June 1994, child support collection began in California.

— In July 1994, Ostler returned to California.

— In 1996, Ostler relocated to Mendocino County.

— In May 1996, Ostler "requested child support review from Mendocino County Family Support."

— In June 1996, Ostler gave Mendocino County Family Support information regarding Vroenen's employment, and she apparently asked for the agency's assistance in obtaining modification of child support and collection of payments in arrears. Also in June 1996, the child support obligation for Mathew ended.

— In August 1998, the child support obligation for Gary ended.

— In December 1998, Vroenen completed payment of all "current" child support.

The trial court concluded Ostler had actively concealed the children for four years, and that Vroenen had been reasonably diligent in making an

effort to locate the children. The court determined that it would be unfair to allow Ostler to collect child support during the time she concealed the children; therefore, she was estopped from collecting arrearages for the period of April 1990 through May 1994.

## DISCUSSION

Ostler contends there was insufficient evidence to support the trial court's decision; and even assuming active concealment, there is no estoppel defense as a matter of law when the concealment ends during the children's minority.

Applying the deferential substantial evidence standard and considering the evidence in the light most favorable to the prevailing party (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 [85 Cal.Rptr.2d 386]), we find no grounds to disturb the trial court's factual findings of active concealment by Ostler and reasonable diligence by Vroenen to locate the children. The more difficult question is whether the defense of equitable estoppel was available to Vroenen under the facts of this case.

Answering this question requires us to interpret and apply the holdings of two opinions from the California Supreme Court. In the first case, *In re Marriage of Damico* (1994) 7 Cal.4th 673, 685 [29 Cal.Rptr.2d 787, 872 P.2d 126] (*Damico*), the Supreme Court held a noncustodial parent may assert the defense of estoppel in an action for the collection of child support arrearages, based on the custodial parent's concealment of the child until the child reached the age of majority. *Damico* involved a couple who married in 1958 and had a son that same year. They divorced in 1960, and the custodial parent allegedly concealed the child from 1960 to 1979. (*Id.* at p. 676.) The Supreme Court found such conduct effectively precluded the noncustodial parent from making support payments. (*Id.* at p. 683.) "We thus conclude that a custodial parent who actively conceals him- or herself and the child from the noncustodial parent until the child reaches the age of majority, despite reasonably diligent efforts by the noncustodial parent to locate them, is estopped from later collecting child support arrearages for the time of concealment." (*Id.* at p. 685.)

The holding in *Damico* does not control the instant case because the concealment here did not continue until the children reached the age of majority. In fact, the Supreme Court declined to express an opinion in *Damico* as to whether a similar rule would apply when the concealment ended while the child was still a minor. (*Damico, supra,* 7 Cal.4th at p. 685.) Approximately two and one-half years later, however, in *In re Marriage of*

*Comer* (1996) 14 Cal.4th 504 [59 Cal.Rptr.2d 155, 927 P.2d 265] (*Comer*), the Supreme Court was presented with a case in which the concealment ended when the children were minors and the action to recoup past due child support began before the children reached the age of majority. The Supreme Court held: "[A] custodial parent's concealment of himself or herself and the child, which concealment ends when the child still is a minor, does not establish a defense to an action, brought on behalf of the child, for child support arrearages." (*Id.* at p. 517.)[1]

In the case before us, the concealment ended when the children were minors, but the action to recoup was not commenced by the child support agency until the children reached the age of majority.

Ostler argues this case is controlled by the holding in *Comer*: Vroenen cannot assert concealment as a defense to enforcement of child support arrearages because the concealment ended when Mathew and Gary were still minors. The trial court, however, decided the holding in *Comer* was "limited to actions 'brought on behalf of the child.' "[2] The trial court added: "Clearly, even after *Comer*, equitable estoppel based on concealment remains as a potential defense in an action to collect child support where the concealment, as here, ended when the children involved were 14 and 16 years old."

A commentator in one treatise disagrees with the trial court: "Except for *Damico*, now essentially confined to its singular, somewhat extreme, facts, withholding custody time with a child—whether through concealment or otherwise—does not generally serve as a defense to paying child support otherwise ordered. The message is clear: as soon as a noncustodial parent is denied custody or visitation, he or she is expected to request an appropriate court order for either modification or enforcement, rather than resorting to the self-help of simply halting payment of ongoing support. That way, the matter will not be left in abeyance for years." (4 Kirkland et al., Cal. Family Law: Practice and Procedure (2d ed. 2001) Support Enforcement, § 141.05, p. 141-28 (rel. 41-3/01) practice tip of Lurvey.) Another treatise, however,

---

[1]The Supreme Court also held in *Comer* that a noncustodial parent may not assert a concealment/estoppel defense against a government agency that has been assigned the right to receive support arrearages for reimbursement of public assistance payments. (*Comer, supra,* 14 Cal.4th at p. 529.) Though Ostler apparently received some public assistance, no government agency has asserted a right to the arrearages in this action.

[2]The trial court did not hold and Vroenen does not argue that the action must be brought in the name of the child. In *Comer*, government agencies acting on the mother's behalf petitioned to enforce the existing support order and to collect arrearages. (*Comer, supra,* 14 Cal.4th at p. 511.) Similarly, in this case, the Mendocino County District Attorney moved on behalf of Ostler, pursuant to former Welfare and Institutions Code sections 11475.1 and 11478.2 (now Fam. Code, §§ 17400, 17406), for a judicial determination of the amount of the child support arrearages.

suggests that an estoppel defense might be upheld when, as in this case, concealment ends during the child's minority but the action for arrearages is not brought until after the child has reached adulthood. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶ 6:736.3, p. 6-283.)

We agree with the trial court that as between Ostler and Vroenen, the equities lie in favor of Vroenen. Nevertheless, the reasoning in *Comer* leads us to conclude that regardless of the outcome in this case and the equities between the parents, we must formulate a rule that leads to the greatest benefit for children. (See *Comer, supra,* 14 Cal.4th at p. 516 [the child's need for sustenance must be the paramount consideration]; see also *Moffat v. Moffat* (1980) 27 Cal.3d 645, 651 [165 Cal.Rptr. 877, 612 P.2d 967].) *Comer* also informs us that the noncustodial parent's appropriate recourse for concealment lies with the remedies provided by the legal system, and not in extralegal self-help. (*Comer,* at p. 530.)

Children do not benefit from the defense of equitable estoppel when concealment ends during the child's minority. Allowing the noncustodial parent to avoid payment by waiting for the custodial parent to take legal action to collect the arrearages, if anything, harms the child by encouraging delay in payment of arrearages.

Further, these matters should not be decided based on the vagaries of the local child support agency's diligence or workload. Here, the trial court specifically found Ostler began to pursue collection of the arrears when at least one of the boys was still a minor. The trial court found the younger child would have benefited had collection of the arrearages begun in May 1996. The uncontradicted evidence shows Ostler pressed the county to assist her in collecting the arrearages, but that the district attorney's office did not file the motion to collect the arrearages until September 1999, after both Mathew and Gary had reached the age of 18 years. The fact they had attained that age did not bar an action for collection of arrearages. (Fam. Code, § 4503.)[3]

We therefore hold that the defense of equitable estoppel is not available when the concealment ends during the child's minority, regardless of when the custodial parent commences an action to collect the arrearage. This rule may in some cases result, as here, in the payment of arrearages after the

---

[3]Family Code section 4503 provides: "If a parent has been ordered to make payments for the support of a minor child, an action to recover an arrearage in those payments may be maintained at any time within the period otherwise specified for the enforcement of such a judgment, notwithstanding the fact that the child has attained the age of 18 years."

child's majority. We would hope, however, that most parents collecting arrearages would choose to help their child with educational or living expenses notwithstanding the fact the child was legally considered an adult. And, of course, the defense of laches is available where child support remains uncollected for many years after the child reaches the age of majority, and where the now adult child has no need for the funds. (See *In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1156-1157 [98 Cal.Rptr.2d 775]; *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1356, 1363 [93 Cal.Rptr.2d 653]; see also *In re Marriage of Copeman* (2001) 90 Cal.App.4th 324, 333-334 [108 Cal.Rptr.2d 801] [laches applied even when both children lived at home and one was still a minor].) That defense was not alleged in this case and would not have been applicable under the facts found by the trial court.

### DISPOSITION

The order of the trial court is reversed. The cause is remanded to the trial court for determination of the amount of the child support arrearages and for an order directing Vroenen to pay that amount to Ostler.

Reardon, Acting P. J., and Sepulveda, J., concurred.